A93A1830. CITY OF LAWRENCEVILLE v. MACKO et al.

(439 SE2d 95)

BLACKBURN, Judge.

On August 23, 1991, the appellees, William and Patricia Macko, brought the instant action for damages and injunctive relief sounding in negligence and nuisance against the City of Lawrenceville, Georgia (hereinafter referred to as the City), and Gaines Brown, a residential builder and the seller of their home based upon the periodic flooding of their basement. The City responded, asserting several defenses, including sovereign immunity, and asserting a cross-claim against Brown and third-party claims against B. J. Goble,[1] a topographical surveyor of the site, and Appalachee Enterprises, Inc., the developer of the subdivision. Brown responded to the Mackos' complaint, asserting several defenses and a cross-claim against the City based upon its alleged negligence in the approval of the construction of the home and negligence in its acceptance and maintenance of the subdivision's drainage system.

Following a trial by jury, judgment was entered on the jury's special verdict returned in favor of the Mackos on both theories, $90,000 against the City and $60,000 against Brown.[2] The City's alternative motion for judgment n.o.v. or new trial was denied by the trial court, and this appeal followed.[3]

The evidence produced at trial shows that Brown applied for a building permit from the City and began construction on the Mackos' home in March 1987. Pursuant to the requirement of the subdivision's final plat, and after the building permit had been issued, Brown obtained a site plan and topographical survey on the lot, which was prepared by Goble. The plan was needed because of the drainage conditions on the lot. The subdivision plat further provided that the City

---

[1] On September 11, 1992, prior to trial, the City dismissed its third-party complaint against Goble without prejudice.

[2] The jury apportioned the damages against the City and Brown, awarding $40,000 against Brown on the negligence claim and $20,000 based upon nuisance, and awarding $60,000 against the City on negligence and $30,000 on nuisance. The jury awarded Brown $30,000 on his cross-claim against the City but the City's cross-claim against Brown was denied. However, the City was awarded $18,750 in its cross-claim against the developer of the subdivision, Appalachee Enterprises, Inc.

[3] Following the filing of this appeal, the City dismissed its third-party complaint against Appalachee Enterprises, Inc. Brown did not appeal the judgment entered against him on the jury's verdict.

disclaimed any responsibility for the overflow or erosion of natural or artificial drains beyond the right-of-way. Thereafter, the City began its three-phase inspection of the home with the initial inspection involving the footings of the home, and subsequent inspections involving the home's structure and mechanical systems. The City's inspectors do not evaluate the drainage systems of homes or the elevation of the home on the property.

At all times relevant to this action, the City had in force a standard building code governing its inspections of homes. Section 101.2.3 of this building code specifically provided that "[t]he inspection or permitting of any building or plan by any jurisdiction, under the requirements of this Code shall not be construed in any court as a warranty of the physical condition of such building or the adequacy of such plan." Section 101.2.1 provided that the building code was remedial in nature and "shall be construed to secure such beneficial interests and purposes thereof — which are public safety, health, and general welfare. . . ." Following its approval of the home's construction, the City issued a certificate of occupancy on the home to Brown.

The Mackos initially saw the home in September 1987, at which time the construction of the home was nearly completed. The Mackos subsequently purchased the home on December 9, 1987, and it is undisputed that the Mackos did not have any discussions with any representatives of the City prior to their purchase. The warranty deed conveying the property to the Mackos provided that the deed was subject to the subdivision plat recorded with the county. It was not until July 16, 1989, that the Mackos experienced the first of three major floods in their drive-under garage, resulting in damage to the home in addition to personal property maintained in the garage, which forms the basis for this action.

1. Initially we must address the City's third enumeration of error concerning sovereign immunity inasmuch as a ruling on this issue may render many of the City's remaining enumerations of error moot. Specifically, the City maintains that the trial court erred in failing to direct a verdict and motion notwithstanding the verdict in its favor on the Mackos' negligence claim based upon the Mackos' failure to affirmatively show that the City waived its immunity from suit. We agree.

"[I]t is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. A municipal corporation shall not waive its immunity by the purchase of liability insurance . . . unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy." OCGA § 36-33-1. See Ga. Const. 1983, Art. IX,

Sec. II, Par. IX. *Hiers v. City of Barwick*, 262 Ga. 129 (414 SE2d 647) (1992); *Peeples v. City of Atlanta*, 189 Ga. App. 888 (377 SE2d 889) (1989). "The doctrine of sovereign immunity is available to a municipality against claims based on negligence." *City of Atlanta v. Atlantic Realty Co.*, 205 Ga. App. 1, 3 (2) (421 SE2d 113) (1992). "Sovereign immunity is not an affirmative defense that must be established by the party seeking its protection. Instead, immunity from suit is a privilege . . . and the waiver must be established by the party seeking to benefit from the waiver." (Citations and punctuation omitted.) *Ga. Dept. of Human Resources v. Poss*, 263 Ga. 347, 348 (1) (434 SE2d 488) (1993).

In the case sub judice, it is undisputed that the Mackos failed to present any evidence showing the City's affirmative waiver of its immunity from suit. The policy of insurance was not presented at trial, and a determination of a waiver of immunity cannot be made if an insurance policy has not been furnished. *Hancock v. Hobbs*, 967 F2d 462 (11th Cir. 1992). Since there was no evidence of any kind showing the City's waiver of sovereign immunity, a directed verdict on the negligence claim was demanded. *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (1) (416 SE2d 807) (1992).

In an effort to explain their failure to submit evidence of liability insurance, the Mackos maintain in their brief that they were not "compelled" to submit such evidence because of their reliance upon the alleged narrowing of the issue of coverage in a pretrial order signed by the parties. Specifically, the Mackos relied upon the following question included in the order and presented by the City on the issues for trial: "Is the City of Lawrenceville entitled to sovereign immunity to the extent that the damages awarded against the City of Lawrenceville are not covered by liability insurance." The Mackos' reliance upon this statement was unjustified inasmuch as this interrogatory was not a factual stipulation or admission that liability insurance existed. In addition, the pretrial order was not signed by the judge, and " '[u]ntil an order is signed by the judge it is ineffective for any purpose.' [Cit.]" *Roman v. Terrell*, 195 Ga. App. 219 (1) (393 SE2d 83) (1990). More importantly, it is well settled that counsel for a municipality cannot waive the defense of sovereign immunity by his actions or inactions in the absence of express statutory or constitutional authorization. *Collins v. Byrd*, 204 Ga. App. 893 (3) (420 SE2d 785) (1992); *Kelleher v. State of Ga.*, 187 Ga. App. 64 (1) (369 SE2d 341) (1988). The Mackos' failure to produce the insurance policy was fatal to their action for negligence, and consequently, the trial court erred in failing to grant its motion for a directed verdict or motion notwithstanding the verdict in the City of Lawrenceville's favor on the negligence claim.

2. Even assuming arguendo that the City waived its immunity from suit through its procurement of insurance covering the event,

considering the merits of the Mackos' claim for damages under a traditional negligence analysis, the City was also entitled to a judgment in its favor because the Mackos have not shown that the City owed to them a duty of care. In *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993), an action wherein the plaintiff alleged a failure of the municipality to provide police protection, our Supreme Court adopted the public policy doctrine. Under this doctrine, "liability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public, except where there is a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual." (Citation and punctuation omitted.) Id. at 27. As a result, liability attaches to the municipality only where a special relationship exists between the municipality and the injured individual which sets the individual apart from members of the general public. Such a special relationship is created if the municipality explicitly assures, through its actions or promises, that it would act on behalf of the injured, the municipality has knowledge that its inaction could lead to harm, and the injured party justifiably and detrimentally relies on the municipality's undertaking. Id. at 29.

Although this "public duty doctrine" has not been applied in this State to municipalities in actions involving the negligent inspections of homes or negligent issuance of building permits, other jurisdictions have applied this doctrine to actions of a municipality in this capacity. *Rich v. Mobile*, 410 S2d 385 (Ala. 1982); *Trianon Park Condo. Assn. v. City of Hialeah*, 468 S2d 912 (Fla. 1985); *Ribeiro v. Town of Granby*, 481 NE2d 466 (Mass. 1985); *Dinsky v. Framingham*, 438 NE2d 51 (Mass. 1982); *Cracraft v. St. Louis Park*, 279 NW2d 801 (Minn. 1979); *Delman v. City of Cleveland Heights*, 534 NE2d 835 (Ohio 1989). As the Supreme Court of Ohio stated in *Delman*, at 836, "[t]he primary purpose of building codes and ordinances is 'to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals.' (Footnotes omitted.) [Cit.]" The Code adopted by the City of Lawrenceville expressly provides that it is to protect the safety, health, and general welfare of its citizens. Accordingly, any negligence in failing to properly inspect property pursuant to the building codes and its negligence in the issuance of the building permit does not create any duty of care to a particular resident.

Applying this public duty doctrine to the facts of this case, we must determine whether a special relationship existed between the Mackos and the City at the time that the alleged negligent acts occurred. It is undisputed that the City did not make specific assur-

ances to the Mackos or promises *prior* to the inspection and approval of the home. In fact, the Mackos did not speak with any representatives of the City prior to their purchase of the home, and did not see the home until the dwelling was nearly completed. Although Ms. Macko testified that after the first major flood of her home, she talked with a city representative who said that he would prepare a work order and have a drainage pipe repaired, this representative was not present at trial. This testimony was hearsay, and " '[h]earsay evidence has no probative value even if it is admitted without objection.' [Cits.]" *Shaver v. State*, 199 Ga. App. 428 (405 SE2d 281) (1991). See also *Turpin v. Worley*, 206 Ga. App. 341 (2) (425 SE2d 895) (1992). Accordingly, this statement cannot be used to establish the necessary assurance on behalf of the City to satisfy the special relationship requirement in light of the explicit disclaimer provided by the City in its building code. As the Mackos did not establish that a duty of care was owed to them by the City based upon a special relationship, the trial court erred in failing to grant the City's motion for directed verdict.

3. In addition, the City was entitled to a directed verdict as a matter of law on the Mackos' nuisance claim. While a municipality may be liable for maintaining a nuisance even in the absence of a waiver of its immunity to suit, "[t]o be liable for nuisance, a municipality must be charged with performing a continuous or regularly repetitious act or condition which causes injury, and it must have knowledge or be charged with notice of the dangerous condition or repetitive acts causing injury. [Cit.] A one-time occurrence does not amount to a nuisance. [Cits.]" *Banks v. Mayor &c. of Savannah*, 210 Ga. App. 62 (435 SE2d 68) (1993). "Liability of a [municipality] cannot arise *solely* from its approval of construction projects which increase surface water runoff. Rather, it is the [municipality's] *failure* to maintain properly the culvert, resulting in a nuisance, which creates its liability. (Cit.)' (Emphasis in original.) [Cit.]" *Provost v. Gwinnett County*, 199 Ga. App. 713, 714 (5) (405 SE2d 754) (1991). Moreover, "[i]f the act, omission, or defect alleged to constitute a nuisance is merely negligence, no matter how egregious the result, the municipality will not be liable for damage suffered. [Cit.]" *Denson v. City of Atlanta*, 202 Ga. App. 325, 327 (414 SE2d 312) (1991).

In the case sub judice, the Mackos asserted in their pleadings that the City "negligently allowed Defendant Brown to construct the improvements on the aforementioned property in violation of Building Codes and the recorded plat governing the property." At trial, the Mackos' expert evidence showed that their home flooded because of the filling of the front of the lot by the builder, the building of the home below the minimum floor elevation level mandated by the subdivision plat and the Goble site plan, the improper installation of the

drainage pipes, the lack of high back curbs, and the filling of the retention pond by the builder. The Mackos also produced evidence showing that the City was negligent in approving the construction of the home and issuing a certificate of occupancy in light of these defects in addition to issuing a building permit prior to receipt of the requisite site plan. While the Mackos produced evidence at trial that the City accepted dedication of the drainage system, and thus were responsible for the maintenance and repair of the system, on the contrary, approval of a plat that contains offers of dedication does not constitute acceptance of the responsibility for the drainage system on the part of a municipality. *Lewis v. DeKalb County*, 251 Ga. 100 (303 SE2d 112) (1983). There is no evidence that the City exercised any control over this drainage system. *Provost*, supra. Even assuming arguendo that the City was responsible for maintaining the drainage system, viewing the evidence in the light most favorable to the verdict, the evidence showed at most that the City was negligent, and, negligence is insufficient to support a cause of action for nuisance. *Denson*, supra. Accordingly, the judgment rendered against the City must be reversed.

4. Based upon our holdings above, we need not address the City's remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED DECEMBER 9, 1993.

*Drew, Eckl & Farnham, T. Bart Gary*, for appellant.
*John E. Mahan*, for appellees.