A91A1259. LANDIS v. ROCKDALE COUNTY et al.
(445 SE2d 264)

ANDREWS, Judge.

After granting certiorari to review our decision in *Landis v. Rockdale County*, 206 Ga. App. 876 (427 SE2d 286) (1992), the Supreme Court entered an order "remand[ing] this case to the Court of Appeals for it to reconsider its decision in light of *City of Rome v. Jordan*, [263 Ga. 26 (426 SE2d 861) (1993)]."

In *Landis*, supra, we assumed, for purposes of the defendants' motion for summary judgment at issue, that the Rockdale County deputy sheriff observed a noticeably intoxicated driver who approached and spoke to him while he was directing traffic at an intersection. The deputy failed to arrest or otherwise restrain the driver from continuing to drive her automobile. We further assumed that about two hours later, after the driver left a party, and while driving her car in an intoxicated condition, she caused an automobile accident which resulted in the death of the plaintiff's husband. The facts are more fully set forth in *Landis*, supra.

On behalf of her deceased husband, the plaintiff sued, among others, Rockdale County, the sheriff of Rockdale County, and the deputy sheriff who observed the intoxicated driver.[1] The controlling issue on the defendants' motion for summary judgment was whether the deputy sheriff, who observed the intoxicated driver before the fatal accident, had a duty to the plaintiff's decedent to protect him from the negligence of the intoxicated driver by arresting or otherwise restraining the intoxicated driver from continuing to drive.

This court's task is to reconsider this case in light of the Supreme Court's decision in *City of Rome*, supra. *City of Rome* involved a negligence claim against the city by a citizen who was injured by the

---

[1] We determined that sovereign immunity did not bar the action.

criminal assault of a third person. The injured citizen claimed that the city police negligently failed to respond to protect her from the attack after she telephoned the police several times before the attack, asking for assistance. In determining that the city was not liable on the negligence claim, the Supreme Court set forth certain general principles applicable to a negligence claim for inadequate police protection.

First, "[t]he threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." Id. at 27. Second, "[w]hen considering whether there is a duty upon which [a governmental unit] may be held liable for the failure to provide police protection to individual citizens . . . [t]he majority rule is that liability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public, except where there is a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual. . . . Therefore, where failure to provide police protection is alleged, there can be no liability based on a [governmental unit's] duty to protect the general public. . . . Hence, where there is a *special relationship* between the individual and the [governmental unit] which sets the individual apart from the general public and engenders a *special duty* owed to that individual, the [governmental unit] may be subject to liability for the nonfeasance of its police department. . . . In order to determine whether such a special relationship exists, we adopt the following requirements: (1) an explicit assurance by the [governmental unit], through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the [governmental unit] that inaction could lead to harm; and, (3) justifiable and detrimental reliance by the injured party on the [governmental unit's] affirmative undertaking." (Citations and punctuation omitted.) Id. at 27-29.

In adopting the three requirements to establish the existence of a special relationship, the Supreme Court noted that "[s]ince the situation is not presented by the facts of this case, we do not determine whether a special duty may exist even in the absence of a special relationship where a police officer is present at the scene of a crime, has the knowledge and the resources to act to the benefit of the injured party, yet does not act." Id. at 29, n. 4. The dissent believes that this language evinces the Supreme Court's intention to distinguish its holding in *City of Rome* from the factual situation presented in *Landis*, where the police officer observed but failed to stop the intoxicated driver hours prior to the fatal accident. Accordingly, the dissent ignores the general principles governing liability set forth in *City of Rome* and concludes that, under the present facts, no special relationship between the plaintiff's decedent and the governmental unit was

necessary in order to impose a special duty owed to protect plaintiff's decedent from the negligence of the intoxicated driver.

We cannot agree with the conclusion reached by the dissent. It is true that the facts in *Landis*, where the relationship at issue was between the deputy and the intoxicated driver, may not lend themselves to application of the three special relationship requirements adopted in *City of Rome*, where the relationship at issue was between the police and the injured citizen. Nevertheless, *City of Rome* provides guidance in our reconsideration of *Landis* in light of the general principle which recognizes that liability for a failure to provide police protection cannot be based on a duty to protect the general public. A more logical understanding of the situation distinguished by the Supreme Court in *City of Rome* is that, even in the absence of one or more of the three express requirements for the existence of a special relationship with the injured citizen, a special duty to protect that citizen might be found under some circumstances where a police officer is present at the scene of a crime about to be perpetrated against the citizen (who at that point is *an identifiable victim*) and the officer fails to act to protect the citizen despite his ability to do so. No decision need be rendered on such a theory, since this is obviously not the type of situation presented by the facts in *Landis*.

In *Landis*, when the deputy sheriff was confronted with the intoxicated driver, plaintiff's decedent was not an identifiable victim in immediate danger of harm. At that point, the deputy sheriff had no contact with plaintiff's decedent. Although the deputy may have been present at the scene of a crime in that he observed an intoxicated driver, the deputy's duty to enforce the drunk driving laws was to the public in general, not specifically to plaintiff's decedent, who was killed hours later in a collision with the intoxicated driver at another location. "The special duty required to maintain the action cannot be established by the mere fact that someone with whom the official had prior contact subsequently injured the plaintiff or the plaintiff's decedent. [Cits.] In deciding the issue of when, if ever, an official's public duty precipitates into a special one to prevent harm to an individual, the law requires, to maintain the action, a showing of imminent harm to an identifiable victim. [Cits.]" *Shore v. Town of Stonington*, 444 A2d 1379, 1383 (Conn. 1982) (no liability although police stopped and released drunk driver, who later caused fatal accident).

A clear majority of states which have considered whether police officers have a duty to restrain a drunk driver have followed the rationale of the "public duty" doctrine, which, as adopted in *City of Rome*, supra, requires that liability be based on facts establishing a duty owed to the injured individual rather than a duty to protect the general public. See *Evett v. City of Inverness*, 224 S2d 365, 366 (Fla. Dist. Ct. App. 1969) (police officer who stopped but released an intox-

icated driver owed no duty, different from that owed to the general public, to the plaintiff's decedent who was later killed in an accident caused by the intoxicated driver); *Crosby v. Town of Bethlehem*, 457 NYS2d 618 (1982) (no duty owed to plaintiff's decedent even though the drunk driver who caused the fatal accident had a conversation with a police officer before the accident; the officer believed the driver was intoxicated but did not restrain him from driving); *Crider v. United States*, 885 F2d 294, 298, n. 3 (5th Cir. 1989) (construing Texas law to be in accord with the "public duty" rationale applied by the majority of states dealing with failure of police to restrain a drunk driver); *Landis*, supra at 883 (Pope, J., dissenting and citing majority position as set forth in Annotation, Failure to Restrain Drunk Driver as Ground of Liability of State or Local Government Unit or Officer, 48 ALR4th 320 (1986)).

In determining whether the deputy in *Landis* owed a duty to plaintiff's decedent, the foregoing principles must be applied in the context of the general rule of Restatement, Torts 2d, § 315, as stated in *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982), that " 'there is no duty to control the conduct of third persons to prevent them from causing physical harm to others.' *Bradley Center* dealt with specific exceptions to the general rule under Restatement, Torts 2d, §§ 315 and 319. Section 315 sets forth two exceptions to the no duty rule where '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.' Section 319 is a more specific statement of the type (a) exception of section 315, and provides that: 'One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.' " *Landis*, supra at 884 (Andrews, J., dissenting).

Under the type (b) exception of § 315, the question is whether there was a special relationship between the deputy sheriff and plaintiff's decedent giving rise to a duty imposed on the deputy to protect plaintiff's decedent from the negligence of the intoxicated driver. As demonstrated in the foregoing analysis, no such special relationship and no such duty existed because the only duty owed by the deputy at the time he encountered the intoxicated driver was a duty to protect the public in general.

The facts of *Landis* are more specifically related to the situation described in the type (a) exception of §§ 315 and 319, as discussed in *Bradley Center*, supra. Under these sections, the question is whether there was a special relationship between the deputy sheriff and the intoxicated driver which imposed a duty on the deputy to control the

driver's conduct. There is no special relationship and no duty imposed under these sections because the deputy sheriff exercised no control over the intoxicated driver. "[T]he police officer's encounter with Taggart does not give rise to the type of 'special relation' contemplated in exception (a) of § 315. The exception under § 315 (a) has been applied in *Bradley Center* and other cases where there is evidence of some type of established, continuous relationship with the third party in which control is exercised. See *Keppler v. Brunson*, 205 Ga. App. 32 (421 SE2d 306) (1992); *Ermutlu v. McCorkle*, 203 Ga. App. 335, 336-337 (416 SE2d 792) (1992); *Associated Health Systems v. Jones*, 185 Ga. App. 798, 801-802 (366 SE2d 147) (1988). The passing encounter of a police officer with a third person in which the officer may or may not determine that probable cause exists to exercise his authority to make an arrest, is not such a 'special relation' for purposes of creating a tort duty to prevent a third person from harming others." *Landis*, supra at 885 (Andrews, J., dissenting); see also id. at 882-883 (Pope, J., dissenting).

Moreover, "although a police officer has authority to arrest a person without a warrant where an offense is committed in his presence or within his immediate knowledge (OCGA § 17-4-20), this *authority* alone does not create a *duty* to arrest for purposes of a tort action. The lack of such an affirmative duty to arrest sufficient to support a tort action is implicit in the holding of *Ferguson v. City of Doraville*, 186 Ga. App. 430, 431-432 (367 SE2d 551) (1988), overruled in part on other grounds, *Vogtle v. Coleman*, 259 Ga. 115, 119, n. 8 (376 SE2d 861) (1989)." *Landis*, supra at 884 (Andrews, J., dissenting); see also *McGuirt v. Lawrence*, 193 Ga. App. 611, 612 (389 SE2d 2) (1989) (physical precedent).

"As a majority of this court noted in *Ferguson*, [supra] (quoting *Pierson v. Ray*, 386 U. S. 547, 555 (87 SC 1213, 18 LE2d 288) (1967), overruled on other grounds *Harlow v. Fitzgerald*, 457 U. S. 800 (102 SC 2727, 73 LE2d 396) (1982)), '[a] policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause and being mulcted in damages if he does.' " *Landis*, supra at 883 (Pope, J., dissenting). The dissent's imposition of a special duty under the facts of this case places police officers in just such a precarious position.

Moreover, by reference to *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716) (1985), the dissent appears to be re-asserting the position originally taken in *Landis*, supra, by creating an expanded common law duty imposed on police officers by analogy to the alcohol provider statutes at OCGA §§ 3-3-22 and 3-3-23. "[T]he rationale underlying our Supreme Court's decision in *Sutter*, [supra], and OCGA §§ 3-3-22 and 3-3-23 do not provide a basis for the expanded common law duty created by the majority in this case. The rationale underlying

*Sutter* and those statutes is that one who provides alcoholic beverages to a person who is noticeably intoxicated and who will soon be driving and/or to one who is younger than the legal drinking age by their own actions increases the risk to others using the highways that they will be harmed by the intoxicated persons. A police officer, on the other hand, by merely coming into contact with someone who is intoxicated, has done nothing to expose the travelling public to any greater danger." *Landis*, supra at 882 (Pope, J., dissenting). We decline to sanction such an expansion of a police officer's duty and potential tort liability. See id. at 886 (Andrews, J., dissenting).

*City of Rome*, supra, provides additional support for the conclusion that the defendants violated no duty for which they could be held liable in tort for the plaintiff's claims. The trial court correctly granted the defendants' motion for summary judgment.

*Judgment affirmed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Johnson, Blackburn and Smith, JJ., concur. Beasley, P. J., and Cooper, J., dissent.*

BEASLEY, Presiding Judge, dissenting.

This tort case presents the important issue of whether a law enforcement officer owed a duty to that segment of the general public, which is within the path of travel of an intoxicated driver within his immediate zone of control, to protect a member of that segment who was killed less than two hours later. The alleged breach is the failure to exercise that control by taking custody of the driver or by taking other reasonable steps to prevent her driving. The facts of the case are set out in our original decision, *Landis v. Rockdale County*, 206 Ga. App. 876 (427 SE2d 286) (1992). Defendants' petition to the Supreme Court of Georgia for writ of certiorari was granted. Ultimately, the Supreme Court remanded the case to this Court for reconsideration in the light of its decision in *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993).

The circumstances of the present case are outside the scope of *City of Rome v. Jordan. Jordan* involves the "special relationship" exception described in the Restatement (Second) of Torts, § 315 (b), between the defendant and the plaintiff.[2] In footnote 4 of the opinion, the Supreme Court stated: "Since the situation is not presented by the facts of this case, we do not determine whether a special duty may exist even in the absence of a special relationship where a police officer is present at the scene of a crime, has the knowledge and the resources to act to the benefit of the injured party, yet does not." Recalling from our earlier decision that the posture of this case fo-

---

[2] *City of Lawrenceville v. Macko*, 211 Ga. App. 312, 314 (2) (439 SE2d 95) (1993), applies this.

cuses our concern on the showing made by plaintiff's evidence on motion for summary judgment, the facts conform to the situation explicitly distinguished in the Supreme Court footnote.

There is evidence that Deputy Drummond was present at the scene where Taggart was driving under the influence, talked with her, was aware of her impaired state, and could have terminated her driving and the palpable risk of injury created by it that evening. This response to her demonstrated condition would have saved the life of plaintiff's decedent.

Having determined that *City of Rome v. Jordan* is not directly controlling, the question remains whether or not the rule announced therein should extend to the circumstances of the present case. I conclude that it should not, to the extent of requiring a special relationship in the sense of direct contact between the injured party and the governmental unit because, as we discussed in our earlier consideration of the case, of the " 'risks involved and the General Assembly's efforts to control drunk driving for the protection not only of those drivers but others on the highways. . . .' [Cit.]" *Landis,* supra, citing *Sutter v. Hutchings,* 254 Ga. 194 (327 SE2d 716) (1985); OCGA § 40-6-391. See *Carleton v. Town of Framingham,* 615 NE2d 588 (Mass. App. 1993), which noted that its legislature had determined that intoxicated drivers should be removed from the highway, so that a police officer's decision to place in protective custody a person whom he knows to be intoxicated and who he has probable cause to believe will imminently drive on the highway is a decision which should not be sheltered by immunity.

Tort liability in drunk driving cases is extended to social hosts and to commercial purveyors of alcoholic beverages, for the benefit of unidentified members of the traveling public, because of the high risk of injury and high rate of occurrence. *Sutter,* supra; *Studebaker's of Savannah v. Tibbs,* 195 Ga. App. 142 (392 SE2d 908) (1990) (physical precedent); *Tibbs v. Studebaker's of Savannah,* 184 Ga. App. 642 (a) (362 SE2d 377) (1987) (physical precedent); OCGA § 3-3-22. These are adoptions of the special relation between the defendant actor (whose duty is at issue) and the third person (intoxicated driver). This gives rise to a duty toward foreseeable victims. The Restatement (Second) of Torts § 315 (a) recognizes this exception to the general principle that a person has no duty to control a third person's conduct. See *Jean W. v. Commonwealth,* 610 NE2d 305, 315 (2) (Mass. 1993).

A policeman's duty, which is undergirded by an officially imposed authority to act, implements that public policy. The duty arises from the officer's presence at the scene of a crime (drunk driving), the nature of which crime gives rise to the occurrence of a foreseeable act (injury-producing car crash), coupled with the total power to prevent

the latter. That is, it arises from the *unique* position, power, knowledge of the officer, and foreseeability, to prevent the tort. See *Jean W. v. Commonwealth*, supra; *Irwin v. Ware*, 467 NE2d 1292 (Mass. 1984). The foreseeability of the harm is a crucial factor in finding the duty and in justifying liability. *Irwin*, supra. In this case a breach of this duty, if found, would permit recovery to the plaintiff if coupled with proximate cause. See *Shore v. Town of Stonington*, 444 A2d 1379, 1384 (Conn. 1982), Peters, A. J., dissenting, and cases cited in the dissent.

I conclude that the trial court erred in granting summary judgment to the three defendants on the claim of Drummond's negligence.

I am authorized to state that Judge Cooper joins in this dissent.

DECIDED MARCH 18, 1994 —
RECONSIDERATION DENIED APRIL 1, 1994 — ■

*Thomas W. Malone, Peterson, Dillard, Young, Self & Asselin, James M. LaChance, Lawrence J. Pond*, for appellant.

*Jenkins & Eells, Frank E. Jenkins III, Maddox, Starnes & Nix, John A. Nix, Chambers, Mabry, McClelland & Brooks, V. Jane Reed, Dawkins & Serio, Harrill L. Dawkins*, for appellees.

Abdul S. Valiani, *pro se*.