CSX TRANSPORTATION, INC. and
National Railroad Passenger Cor-
poration (Amtrak), Plaintiffs,

v.

CITY OF GARDEN CITY, GEORGIA,
Defendant/Third Party Plaintiff,

v.

Arco, Inc., Third Party Defendant.

No. 498 CV 223.

United States District Court,
S.D. Georgia,
Savannah Division.

Feb. 25, 2002.

James W. Purcell, L. Dean Best, Amy R. Snell, Fulcher, Hagler, Reed, Hanks & Harper, LLP, Amy R. Snell, Fulcher Law Firm, Augusta, GA, for Plaintiffs.

James Philip Gerard, Patrick T. O'Connor, Christopher L. Ray, Oliver, Maner & Gray, Edward R. Stabell, III, Brennan, Harris & Rominger, Savannah, GA, for Defendants.

Edward R. Stabell, III, Brennan, Harris & Rominger, Savannah, GA, for Arco, Inc., defendant.

## ORDER

EDENFIELD, District Judge.

## I. *INTRODUCTION*

A 1997 truck/train collision resulted in litigation over the liability of plaintiffs CSX Transportation, Inc., the train track owner, and National Railroad Passenger Corporation (Amtrak), which owns the subject train. CSX[1] brought this indemnification action against the defendant City of Garden City, Georgia, which third-party claimed against ARCO, Inc.

Thereafter, the City moved for, and this Court granted, summary judgment against

---

1. For convenience only, the Court will refer to both plaintiffs as one entity, "CSX."

CSX. The Eleventh Circuit vacated that judgment on appeal, *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325 (11th Cir.2000) (*CSX*), and on remand CSX moved for partial summary judgment against the City. Doc. # 58. This Court denied that motion, then ordered CSX to show why the City is not entitled to summary judgment. Doc. # 68. CSX has responded, doc. ## 69, 76, as has the City. Doc. # 70. ARCO, meanwhile, moves for summary judgment against CSX and the City. Doc. # 72.

## II. BACKGROUND

The issue at this juncture is whether a Georgia municipality can, through the purchase of insurance, contractually waive its sovereign immunity for the specific purpose of indemnifying a private party against tort liability claims. That waiver would run against the City, which contracted to indemnify CSX against third party claims brought against CSX. The *CSX* opinion succinctly explains:

In 1996, the City ... decided to install water and sewer lines along the public rights-of-way that ran across, under, and parallel to [CSX's] railroad tracks. The City contracted with CSX to use CSX's rights-of-ways and agreed to indemnify CSX for any damages arising out of the City's use of the rights-of-way. Under the contract, the City agreed to maintain insurance to cover the indemnity obligations it had assumed.

Garden City employed ARCO, Inc. as the general contractor for this project which employed CARLCO Trucking, Inc. as a sub-contractor. On [10/9/97] a CARLCO employee drove a tractor-trailer truck to the City's work site to remove equipment. As he crossed CSX's tracks, his truck stalled on the tracks where it was hit by a[n Amtrak] passenger train. CSX paid damages to passengers on the train and sued Garden City for indemnification under their agreement. Garden City filed a third-party claim against its contractor, ARCO.

235 F.3d at 1326–27.

Subsequently, the City moved for summary judgment against CSX on immunity and other grounds. Doc. # 32. Granting summary judgment,[2] this Court noted that the City's third-party complaint against ARCO for indemnification was still pending. Doc. # 44 at 10–11. Subsequently, the City dismissed that without prejudice, doc. # 47, thus enabling CSX's appeal under the "final judgment" doctrine.

On appeal the Eleventh Circuit focused on the indemnification issue:

The indemnification contract between CSX and Garden City provided that the City would assume liability for all claims arising out of its construction in CSX's rights-of-way. It, in effect, required the City to waive its sovereign immunity vis-a-vis CSX in connection with any claims against *CSX* arising out of the City's construction project. Georgia law, however, forbids a city from waiving its sovereign immunity unless it has insurance to fund any liability it might thereby incur.

*Id.* at 1329 (emphasis added).

*This* Court had concluded that "the indemnification agreement ... is barred by

---

**2.** As it did then, and will do so now, this Court applies the summary judgment principles explained in *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir.1996) and *Cohen v. United American Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir.1996). Un-

rebutted, evidentially supported Fact Statements are deemed admitted under S.D.Ga.Local Rule 56.1 and *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988).

municipal immunity—except to the extent that the City obtained insurance to cover it." Doc. # 44 at 4. Because CSX made no showing that the City procured or had any such insurance, this Court held that its agreement to indemnify CSX was *ultra vires* and thus void. *Id.* at 5–6.

Even though, according to the Eleventh Circuit, the City had identified (in an interrogatory response) an "insurance policy," *CSX,* 235 F.3d at 1330 n. 7, CSX did not move this Court to reconsider in light of the existence of any insurance policy. *See* doc. # 44 at 6. Instead, it waited until it was before the Eleventh Circuit, then moved that court for leave to supplement the record so it could point to it. In so doing, it sought

> to show that Garden City participates in the Georgia Interlocal Risk Management Agency (GIRMA) fund which provides it coverage up to $1,000,000 against "all sums which [Garden City] shall be obligated to pay as money damages by reason of liability imposed upon [Garden City] by law or assumed by [Garden City] under contract or agreement." CSX argued in its motion that the grant of summary judgment was in error because the City does have the requisite insurance to enable it effectively to waive its sovereign immunity. An [Eleventh Circuit] panel . . . . denied the motion[,] but CSX renewed it on appeal in its brief and at oral argument.

*CSX,* 235 F.3d at 1330 (brackets original and added).

Noting that it "rarely enlarge[s] the record on appeal to include material not before the district court which has labored without the benefit of the proffered material," the Eleventh Circuit nevertheless exercised its "inherent equitable power to allow supplementation of the appellate record if it is in the interests of justice." *Id.*

Because the existence of the insurance was "pivotal" to the case, and the City had never argued "lack of insurance" before *this* Court,[3] the appellate court granted CSX's supplementation motion over the City's opposition. *Id.* The Eleventh Circuit then concluded:

> Since the district court never had the opportunity to consider what effect, if any, the City's participation in the GIRMA fund has on the City's indemnification agreement with CSX, we shall remand the case to the district court so that it may consider this fact before determining whether Garden City effectively waived its immunity by its agreement to indemnify CSX.

*CSX,* 235 F.3d at 1331.

That court thus vacated this Court's summary judgment to the City and remanded for further proceedings. *Id.* In response, the City obtained ARCO's reinstatement on remand. Doc. ##46, 49, 55–56, 61. On remand, CSX contended that, since the evidence shows the City's GIRMA participation, it was entitled to summary judgment against the City on liability. ARCO and the City disagreed. Doc. ## 65–66.

The City conceded GIRMA participation but insisted that

> (a) the burden is on CSX to show that the City waived municipal immunity, doc. # 65 at 2–3;

> (b) GIRMA-based waivers are narrow and specific, *id.* at 6 ("It is not clear, however, that such a waiver exists for *all* damages claims of whatever provenance") (emphasis original);

---

**3.** As noted in its 10/1/01 Order, this Court     respectfully disagrees. *See* doc. #68 at 2 n. 2.

(c) the Court must first determine that the City was negligent—CSX's or a third party's negligence could have caused the complained of damage—and *then* "determine whether Georgia law permits a waiver of sovereign immunity for purposes of assuming the tort liability of third parties," *id.* at 4–7;

(d) "the mere attempt by a municipality to shoulder the tort liability of a third party is an *ultra vires* act which cannot be countenanced by the courts"; *id.* at 7 (in other words, the City "lacked the legal capacity to undertake third party tort liability in the first instance," and the mere acquisition of insurance cannot ratify an otherwise unlawful act). *Id.*

Because the indemnity agreement is "utterly void and cannot be salvaged," the City concluded, the Court had to deny CSX's summary judgment motion. *Id.* The City essentially restates these arguments now, doc. # 70, and ARCO concurs. Doc. # 74 at 16.

As this Court explained in its last Order, doc. # 68 at 4, these arguments necessitate review of Georgia sovereign (governmental) immunity doctrine. Again, the issue is whether the City is legally authorized to contractually waive its immunity by purchasing insurance to indemnify CSX against third party liability claims.

Local government officials can make imprudent contractual decisions which can, in one fell swoop, wipe out an entire community's tax base well into the future. That's one of the reasons why Georgia's legislature statutorily restricts their contracting authority. *See* O.C.G.A. § 36–30–3(b)–(d); *Unified Government of Athens Clarke County v. North,* 250 Ga.App. 432, 436–37, 551 S.E.2d 798 (2001) (O.C.G.A. § 36–60–13, providing that a city or county multiyear purchase contract for goods or services must be subject to annual termination by the city or county, is intended to prohibit the creation of a county or municipal debt in excess of one year).

That legislative control is well-established and grounded in Georgia's constitution. *See City of Bremen v. Regions Bank,* 274 Ga. 733, ——, 559 S.E.2d 440, 443 (2002) (Written agreement between city and development authority, under which city would advance $200,000 to development authority for authority to pay debts owed for golf course's construction, did not exceed scope of city's authority pursuant to Georgia's Constitution, and thus city could not avoid its responsibility under tax anticipation note, where agreement was executed three months after city obtained loan in exchange for tax anticipation note); *Martin v. Ga. Dept. of Pub. Safety,* 257 Ga. 300, 301, 357 S.E.2d 569 (1987) (the Georgia Constitution's sovereign immunity extends "to preserve the protection of the public purse...."); O.C.G.A. § 36–34–1 ("It is declared to be the intention of the General Assembly to vest certain general powers in the governing body of each of the municipal corporations of this state...."); O.C.G.A. § 36–10–1 (municipal contracts must be in writing and entered on the minutes); *Precise v. City of Rossville,* 261 Ga. 210, 210–11, 403 S.E.2d 47 (1991) (Municipal corporations have only limited power to enter into contracts; if a contract is beyond the power or competence of local government, then it is ultra vires and void); 64 Am. Jur.2d § 14 (*Where Contract Is Beyond Powers or Where Conditions Precedent Are Not Complied With*) (2001); *id.* (*Public Works and Contracts*) § 8 (2001).

■ At the same time, the "Georgia Constitution provides that the General Assembly may waive the immunity of counties, municipalities, and school districts by statute." *Cameron v. Lang,* 274 Ga. 122, 126, 549 S.E.2d 341 (2001) (footnote omitted). One statute, "O.C.G.A. § 36–33–1[,]

states that a municipal corporation shall *not* waive its immunity by the purchase of liability insurance, *except* as provided in [O.C.G.A.] 33–24–51." *Id.* (emphasis added).

■ "O.C.G.A. § 33–24–51 gives cities and counties the discretion to purchase liability insurance to cover damages arising from the use of any motor vehicle, providing a limited waiver of their governmental immunity to the amount of the insurance purchased." *Id.*[4] Cities, then, can waive immunity by insuring their motor vehicles. *Id.* at 347; *see also Williams v. Solomon,* 242 Ga.App. 807, 810, 531 S.E.2d 734 (2000).[5]

■ Hence, "the mere purchase of insurance will not waive immunity if the legislature ha[s] not provided for such a waiver by statute." 57 Am.Jur.2d § 36 (*Municipal, County, School, & State Tort Liability*) (2001).[6] *See also Woodard v. Laurens County,* 265 Ga. 404, 405, 456 S.E.2d 581 (1995) (Under constitutional provision governing sovereign immunity, mere purchase of insurance coverage cannot operate as waiver of immunity; defense can only be waived pursuant to legislative act which *specifically provides* that sovereign immunity is waived and *extent of waiver*); *Carter v. Glenn,* 249 Ga.App. 414, 415, 548 S.E.2d 110 (2001) (Statute providing that immunity was waived to extent that municipality purchased insurance to cover risk for which claim was brought did not apply to claims brought by victim of alleged rape by police officer against mayor and police chief; statute limited immunity waiver to insurance covering liability arising by reason of ownership, maintenance, operation, or use of any motor vehicle by municipal corporation, and her claims did not arise out of use of motor vehicle); *Chamlee v. Henry County Bd. of Ed.,* 239 Ga.App. 183, 186, 521 S.E.2d 78 (1999) ("Accordingly, even if the defendant has purchased the type of insurance described in O.C.G.A. § 33–24–51(a) and (b), if the claim does not fall within the type of coverage described in subsection (a) as limited by subsection (b), then sovereign

4. Courts are liberal with what sort of policy can do that. A general liability policy, for example, was construed to provide coverage (and thus waive liability) for motor-vehicle-based occurrences. *See McLemore v. City Council of Augusta,* 212 Ga.App. 862, 863, 443 S.E.2d 505 (1994) (Although termed a "general liability policy," the court held that the policy's language was sufficient to encompass claims arising from automobile collisions; "It is the nature of the insurance coverage provided by a policy rather than title of the policy which determines if it is a policy within the meaning of O.C.G.A. § 33–24–51").

5. Note that "[s]overeign immunity is not an affirmative defense that must be established by the party seeking its protection. Instead, immunity from suit is a privilege and the waiver must be established by the party seeking to benefit from the waiver." *Athens–Clarke County v. Torres,* 246 Ga.App. 215, 217, 540 S.E.2d 225 (2000). CSX, then, must show waiver, though a well-pled allegation can shift the burden of proof to

the governmental body involved. *See Maxwell v. Cronan,* 241 Ga.App. 491, 492, 527 S.E.2d 1 (1999) (complaint stating that sovereign immunity was waived to the extent of defendant's purchase of liability insurance for injuries arising out of school bus use was sufficient to shift burden to school board to submit an affidavit denying the existence of a motor vehicle liability policy); *City of Lawrenceville v. Macko,* 211 Ga.App. 312, 314, 439 S.E.2d 95 (1993).

6. Citing *Crisp County School System v. Brown,* 226 Ga.App. 800, 802, 487 S.E.2d 512 (1997) (the mere existence of a school system's liability policy did not constitute a waiver of immunity with respect to a student's suit seeking damages for negligent supervision, where statutory provision waiving the political subdivision's immunity from suit upon its purchase of liability insurance was expressly limited to the waiver of immunity from liability for damages arising by reason of the ownership, maintenance, operation, or use of a motor vehicle).

immunity is not waived"); *Long v. Hall County Bd. of Commrs.*, 219 Ga.App. 853, 856, 467 S.E.2d 186 (1996) (Defense of sovereign immunity to tort liability cannot be waived by mere purchase of insurance coverage, but only pursuant to legislative act which specifically provides that sovereign immunity is waived and extent of such waiver).

■ Even where a statute authorizes an insurance-backed waiver, the facts behind the claim must fall within the insurance coverage itself. *Chamlee*, 239 Ga.App. at 186, 521 S.E.2d 78 ("Resolution of whether sovereign immunity has been waived necessarily requires an analysis of whether the defendant has purchased the type of insurance defined in O.C.G.A. § 33–24–51(a) and (b) *and* whether the claim falls within that coverage") (emphasis original); 14 GA. JUR. PERSONAL INJURY AND TORTS § 33:1 (2001).

■ It's conceivable, then, that a statutory provision might authorize a municipality to waive its immunity by purchasing insurance for some hazard, yet still repel a claim because it does not fall within the scope of the coverage purchased. *Saylor v. Troup County*, 225 Ga.App. 489, 489, 484 S.E.2d 298 (1997) ("The purchase of insurance coverage waives a county's sovereign immunity only to the extent of such insurance coverage"); *see also State ex rel. Ripley County v. Garrett*, 18 S.W.3d 504, 505 (Mo.App. S.D.2000) (the policy itself may not cover the claim); 57 AM.JUR.2D *Municipal, County, School, & State Tort Liability* § 28 (2001).

■ Unlike the typical case involving a local government found to have supplied insurance for one of its vehicles involved in an accident, here the parties *contracted* for the City (the first party to the contract) to purchase insurance to enable it to indemnify the *second* party (CSX) against claims brought by *third* (injured rail passengers) parties against *CSX*. Consequently, CSX is advancing a contract (not tort) claim against the City (*i.e.*, it is seeking recovery under the indemnification *contract* for the cost of any tort claims brought against CSX).

Suffice it to say that those facts place this case far from the norm. In any event, there is no dispute (*see* doc. # 65 at 4) that the City participates in GIRMA, *see* O.C.G.A. § 36–85–1(10), a risk-sharing fund providing $1 million coverage to participating municipalities. *See Miller v. Georgia Interlocal Risk Management Agency*, 232 Ga.App. 231, 231, 501 S.E.2d 589 (1998); *see also City of Arvada v. Colorado Intergovernmental Risk Sharing Agency*, 19 P.3d 10, 14 (Colo.2001) (discussing municipal self-insurance pools of this nature); *Dawes v. Nash County*, 559 S.E.2d 254, 256–57 (N.C.App.2002). CSX, then, has met part of its burden—it has shown that there is "insurance coverage."

■ To that end, the Court will assume, for the purposes of this Order, that CSX's indemnification claim falls within the scope of the GIRMA policy's coverage. But the above case law also requires that CSX show express legal authorization for the City to have waived its immunity to cover this situation. And, as the above-cited Georgia cases show, courts can find waiver only by a clear statutory or constitutional pronouncement—a requirement commonly imposed elsewhere. *See, e.g., Reyes v. Hardin County*, 55 S.W.3d 337, 339 (Ky. 2001) ("We will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction") (quotes and cite omitted). To meet that burden, CSX points to O.C.G.A. § 36–33–1(a), which states:

**§ 36–33–1 Immunity from liability for damages; waiver of immunity by purchase of liability insurance; liability for acts or omissions generally.** (a) Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, the General Assembly, except as provided in this Code section, declares it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. A municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33–24–51, *or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy.* This subsection shall not be construed to affect any litigation pending on July 1, 1986.

*Id.* (emphasis added); doc. # 69 at 3–4.

CSX cites the emphasized portion of the statute and the *Macko* case. There some homeowners alleged a city was negligent in failing to properly inspect property prior to the issuance of a building permit. The appellate court held that the city's sovereign immunity defeated the plaintiffs' claims. 211 Ga.App. at 314, 439 S.E.2d 95. Even in the absence of sovereign immunity, Georgia's public duty doctrine would have operated to prevent recovery because the plaintiffs had not shown that the city owed them a duty of care greater than it owed the general public. *Id.* at 314–17, 439 S.E.2d 95.

The court also mentioned the insurance-waiver theory but dismissed it because the plaintiffs failed to prove the existence of any insurance. *Id.* at 313–14, 439 S.E.2d 95. The same thing happened in *Hancock*

*v. Hobbs,* 967 F.2d 462 (11th Cir.1992), which, like *Macko,* expressly spoke of *tort* claims in acknowledging that purchased insurance could waive immunity. *Id.* at 469.

CSX points to *Macko* as impliedly holding that the above-emphasized § 36–33–1 excerpt authorizes immunity waiver for pretty much anything, so long as there exists insurance to cover it. Doc. # 69 at 3–7; # 76 at 6 ("Had the [*Macko*] plaintiffs introduced an insurance policy, however, the clear implication is that the policy may have been a waiver of immunity if it covered the claim being asserted against the city, a claim that did not arise out of a motor vehicle accident with a governmental official").

The City correctly responds that *Macko* and cases like it do not squarely say that the mere purchase of insurance will suffice. Doc. # 70 at 6. To that end, the City insists that this dispute is about the *breadth of the City's authority* to enter into the subject contract, and not simply what its obligations are under it. *Id.*

The problem here, of course, is the lack of clarity in Georgia's judicial pronouncements. Consider what the *Cameron* court said:

The Georgia Constitution provides that the General Assembly may waive the immunity of counties, municipalities, and school districts by statute. O.C.G.A. § 36–33–1 states that a municipal corporation shall not waive its immunity by purchasing liability insurance, *except* as provided in Code Section 33–24–51. O.C.G.A. § 33–24–51 gives cities and counties the discretion to purchase liability insurance to cover damages arising from the use of any motor vehicle, providing a limited waiver of their governmental immunity to the amount of the insurance purchased.

*Cameron,* 274 Ga. at 126, 549 S.E.2d 341 (footnotes omitted; emphasis added). But that court did not pass on the remainder of § 36–33–1(a): *"or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy."* (Emphasis added).

*City of Douglasville v. Queen,* 270 Ga. 770, 514 S.E.2d 195 (1999), provides inferential support for the result CSX urges. *See id.* at 771 n. 2, 514 S.E.2d 195 (in negligence action by father of children injured and killed by a train as they walked tracks to watch city parade, court upheld grant of summary judgment to city on negligence and nuisance claims, but *not* on sovereign immunity, noting: "It is uncontroverted that the City's sovereign immunity was waived by the purchase of insurance. O.C.G.A. § 36–33–1").

■ Still, *Queen,* like *Macko* and *Hancock,* spoke of negligence (hence, *tort*), not contractual liability. Given the short leash Georgia's legislature holds over municipalities, courts should be wary of opening the liability door to damages flowing from a contract not expressly authorized by the Georgia constitution or "municipal-contract" statutes cited *supra.* CSX has pointed to no express authority for a contract enabling CSX to hold the City liable for negligence claims against CSX. Note, incidentally, that

[i]n a majority of jurisdictions … the procurement of liability or indemnity insurance by a governmental unit has *no effect* upon its immunity from tort liability. In support of this view it has been said that the mere fact that a governmental unit is authorized to procure insurance does *not* warrant the conclusion that its immunity has been removed; that a governmental unit lacks power to waive its immunity or estop itself by procuring insurance; and that liability or indemnity insurance which is procured by a governmental unit entitled to immunity from *tort* liability is insurance only against *torts* which do not come within the scope of the immunity—for example, *torts* committed by the unit while acting in its proprietary, as contrasted with its governmental, character.

Ann., *Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability,* 68 A.L.R.2d 1437 § 1(b) (footnotes omitted; emphasis added).

■ The context in which § 36–33–1(a) sits shows that the Georgia legislature was interested in permitting, contingent on the purchase of insurance, a way for injured members of the public to "sue city hall" for *negligence* damages. That's the sort of damages to which the *Queen, Macko* and *Hancock* courts adverted, not *contract*-based damages,[7] and most certainly not *contract* damages flowing from the "tort indemnification" of third parties like CSX.[8]

---

7. The Court's own survey of other States' law reveals this same, "torts-only" distinction in immunity waiver doctrine. Representative cases include *Richards v. Town of Eliot,* 780 A.2d 281, 295 (Me.2001); *City of Red Wing v. Ellsworth Community School Dist.,* 617 N.W.2d 602, 609 (Minn.App.2000); *Dobrowolska ex rel. Dobrowolska v. Wall,* 138 N.C.App. 1, 530 S.E.2d 590, 594 (2000); *Fettkether v. City of Readlyn,* 595 N.W.2d 807, 813 (Iowa App.1999).

8. CSX's citation to *DeKalb County v. Lenowitz,* 218 Ga.App. 884, 463 S.E.2d 539 (1995), adds little here. Doc. # 69 at 11. There the indemnification agreement ran between two municipal governments, and sovereign immunity, much less insurance supporting waiver of same, was never discussed.

There may be a good policy argument for the result CSX wants. Cities would want to be able to induce the CSX's of the world to cooperate in public works projects such as in the case *sub judice* by entering into contractual indemnity agreements. But that in effect calls for a city to indirectly obtain GIRMA coverage for a private party:

(a) CSX argues that there should be "no problem" here because the City's funds will be shielded by GIRMA coverage; yet

(b) why the City, in 1996, could not simply have made a one-time payment to CSX so CSX could purchase its own insurance coverage is not explained;

(c) instead, the City agreed to insure *itself* against *CSX's* contractual damages claim for torts litigated against CSX;

(d) the City thus winds up using its GIRMA coverage to pay CSX;

(e) that is, practically speaking, little different than if the City simply paid CSX to get its own insurance, so

(f) in a roundabout way the City, via contractual agreement, in effect procures GIRMA coverage for *CSX's* (as opposed to the City's) tort losses (again, CSX agrees that it cannot hold the City liable for anything more than what GIRMA will cover).

That result is simply *not* expressly authorized by the insurance-waiver statute. Remember that the legislature statutorily restricts municipalities' contracting authority to prevent public-fisc fiascos. It does so because even "safe-bet" contracting can carry subtle, unanticipated risks. *See, e.g., Zimmerman for Zimmerman v. Village of Skokie,* 183 Ill.2d 30, 231 Ill.Dec. 914, 697 N.E.2d 699, 711–12 (1998) (Municipality's purchase of liability insurance policies did not operate as complete waiver by municipality of protections of Local Governmental and Governmental Employees Tort Immunity Act, with respect to claim arising before 1986 amendment of Act, where municipality had a self-insured retention, and two insurance companies from which municipality had purchased polices were bankrupt and defunct, so that public money was implicated by claims against municipality).

It follows that, whether cities should venture down this sort of contractual indemnification path is a considered choice the Georgia legislature should make (*e.g.,* by amending § 36–33–1 to explicitly allow for *contractually based* damages claims as advanced here), not a federal court sitting in diversity. CSX's reliance on cases like *Precise* does not assist it here. There the court said:

State law relating to the sovereign immunity of municipalities is codified in OCGA § 36–33–1 et seq. Although the doctrine of municipal immunity has been codified since 1895, we have never construed it as a defense to action for the breach of a valid contract. To the contrary, we have repeatedly enforced valid contracts against municipalities. We now hold that municipal immunity is not a valid defense to an action for breach of contract. Anything to the contrary is specifically overruled.

261 Ga. at 211, 403 S.E.2d 47 (cites omitted).

Of course, there must in fact be a *valid* contract. The *Precise* court reaffirmed that municipalities are statutorily restricted in their contracting authority. *Id.* at 210–11, 403 S.E.2d 47 ("We have long acknowledged that municipal corporations have only limited power to enter into contracts"). CSX's reliance on *Williams v. Georgia Power Co.,* 233 Ga. 517, 212 S.E.2d 348 (1975), fails in light of *Dekalb County v. Gibson,* 146 Ga.App. 573, 573–74, 246 S.E.2d 692 (1978) (Sovereign immunity completely barred claims against county, either for breach of contract or on basis of maintenance of nuisance, to recov-

er damages for wrongful death arising from drowning of plaintiff's son which occurred while he was swimming at park facility owned and operated by county).

Because the City–CSX indemnification contract is *ultra vires,* the City is entitled to summary judgment against CSX, and it is not necessary to reach the City's remaining arguments. In that this result moots most of the City's third-party claim against ARCO, ARCO is entitled to summary judgment against the City to that extent.[9]

Meanwhile, CSX insists it has "never filed any claims against ARCO in this case," doc. # 83 at 2, so that moots any summary judgment ARCO seeks on CSX's claims against it. *See* doc. # 74. To that extent, ARCO's summary judgment motion against CSX (*see* doc. # 83 at 29–35) will be denied as moot.

■■■ The result reached here nevertheless is troubling—an insurer essentially evades liability while riding the insured's sovereign immunity coattails. An insurer,[10] not the City's taxpayers, therefore benefits to CSX's detriment. On the other hand, "[i]t is familiar 'law' that one who deals with a municipality is presumed to know of any legal limitations upon the city's power to contract. Ordinarily, that presumption leaves the disappointed party in whatever position his 'invalid' contract has cast him." P. Sentell, Jr., *Local Government Law,* 49 Mer.L.Rev. 215, 225 (Fall 1997).

The parties have raised a first-impression issue of municipal law and public policy. At the same time, "[t]he issue of sovereign immunity from liability for torts of local government entities in Georgia has been described as charged with mind-numbing bewilderment." 14 Ga.Jur. Personal Injury and Torts § 33:1 (2001) (quotes and footnote omitted). Subject to the final-order doctrine, *CSX,* 235 F.3d at 1327–29, the Court therefore will consider F.R.Civ.P. 54(b) certification in the event of an appeal. *See, e.g., Carringer v. Tessmer,* 253 F.3d 1322, 1323–24 (11th Cir. 2001).

## III. CONCLUSION

The Court:

(a) ***GRANTS*** summary judgment to defendant City of Garden City, Georgia (the City) against the plaintiffs;

(b) ***GRANTS*** third-party defendant ARCO, Inc.'s motion to file settlement under seal (doc. # 71);

(c) ***GRANTS AND DENIES IN PART*** ARCO's summary judgment motion (doc. # 72); and

(d) ***DISMISSES WITH PREJUDICE*** plaintiffs' Complaint.

Because the City's claim against ARCO still remains, the Clerk shall not close this case.

---

9. The City says that, even if the Court rules in its favor on the *ultra vires* issue, nevertheless ARCO is still liable to it for its attorney fees and costs. Doc. # 81 at 3–5. Counsel are directed to confer within ten days of the date this Order is served and seek resolution, then present to this Court, within ten days thereafter, either a settlement stipulation or the City's motion for summary judgment on this remaining claim (alternatively, a brief showing why it cannot move for summary judg-

ment). This directive is automatically suspended pending any appeal from this Order.

10. Yet, GIRMA is *not* an insurer in the traditional sense. *See* O.C.G.A. § 36-85-4 ("An interlocal risk management agency created pursuant to this chapter is not an insurance company or an insurer under Title 33, and the development and administration by such agency of one or more group self-insurance funds shall not constitute doing business as an insurer").