### 39572. LEWIS et al. v. DeKALB COUNTY.

CLARKE, Justice.

Mr. and Mrs. Lewis bought a lot in DeKalb County in 1973 and applied for a building permit. They were informed that a stream ran across the property and that they would have to build their driveway in a manner which would avoid obstruction of the stream. The stream originates in Silver Lake, a privately owned 27.5 acre lake near Oglethorpe University to the east of the Lewis property, and drains westerly into Nancy Creek. The Lewises built a bridge over their driveway. Adjoining property owners attempted to solve the driveway problem by putting in large pipes and filling the area around them with dirt. The pipes on the lower property were insufficient to prevent backup of water onto the Lewis property. The county investigated the situation and required that the owner replace the pipes with larger ones. There were no changes made to remedy the flooding caused by the upstream property owner's culverts' being clogged with debris. The Lewises contend that the culverts should be replaced by bridges.

In addition to flooding caused by the insufficient capacity of culverts on neighboring property, the Lewises experienced flooding caused by the alteration of a dam on Silver Lake. Because of concern that the dam was unsafe, the county lowered Silver Lake and then cut a v-shaped notch into the dam face. The Lewises allege that they have suffered damage because of water in their home as a result of the actions of the county. During a flood in August 1979, the water level reached 30″ in their house.

Mr. and Mrs. Lewis settled an earlier action against the builders of the houses on either side. They filed the present suit against the county, seeking injunctive relief and damages and against the county and adjoining property owners. The trial court granted summary judgment to the neighbors on the basis of a release obtained in the earlier action. The court granted summary judgment to the county on the two remaining counts of plaintiffs' complaint dealing with continuing nuisance and taking without compensation. Mr. and Mrs. Lewis appeal the grant of summary judgment to the county.

1. The first question on appeal is whether the county maintained the drainage ditch as a continuing nuisance. We held in *Miree v. United States,* 242 Ga. 126, 134 (249 SE2d 573) (1978), that ". . . where a county causes a nuisance to exist which amounts to a taking of property of one of its citizens for public purposes, the county is liable." The Lewises bought the property subject to the drainage easement which had been dedicated to the county. Although the Lewises contend that the dedication had been accepted by the

county, the county insists that there was no acceptance of the dedication so as to make the county responsible for maintaining the drainage easement. The Lewises argue that acceptance of the dedication was manifested by (1) the county's recording the subdivision plat which contained an express dedication of the drainage easement required by ordinance; (2) the maintenance of the easement by the county; and (3) the use of the ditch by the public to maintain flood control.

The Lewises rely upon our recent decision in *Smith v. Gwinnett County,* 248 Ga. 882 (286 SE2d 739) (1982), for the proposition that where an ordinance requires dedication of an easement to the county before the county will approve a subdivision plat, the county will be deemed to have accepted the dedication. The Lewises point out that the DeKalb County Code of 1963, § 17-25, in effect at the time of the recordation of the plat containing the subject property, required that the plat contain a certified acknowledgement by the owner ". . . that this plat was made from an actual survey and dedicates to the use of the public forever all streets, alleys, parks and watercourses, drains, easements and public places thereon shown for the purposes and considerations therein expressed."

In *Smith v. Gwinnett County,* supra, we said: "It may be that where a county would not approve a subdivision plat unless a park area were dedicated to the county, approval of the plat would constitute an acceptance of the dedication." Id. at 886. However, we went on to say that mere approval of plats containing offers of dedication did not constitute acceptance. We find that the mere requirement that the plat contain language of dedication of areas commonly dedicated does not constitute acceptance on the part of the county.

The Lewises' other theories as to the county's acceptance of the dedication involve a contention that the county maintained the ditch or streambed. There is no evidence that the county ever exerted any control over the easement or that the county took any action to control the flow of water through the ditch except to require that the contractor for the property next to the Lewises place corrugated pipes supplied by the county in the ditch to act as culverts.

Finally, and most importantly, an insert to the plat contains language specifically releasing DeKalb County from liability or responsibility for flooding or erosion from storm drains or from flooding from high water of natural creeks or rivers. The Lewis deed recited that the property was conveyed subject to the subdivision plat.

DeKalb County did not assume responsibility for maintenance of the ditch in question through acceptance of a dedication of the

easement. There is no allegation that the county took any action which caused any change in the flow of the stream other than breaching the dam at Silver Lake. Since, as we point out in the discussion which follows, this constituted an exercise of the police power during an emergency rather than a taking of private property for a public purpose, this action cannot amount to the creation of a nuisance. Therefore, DeKalb County is not liable to the Lewises either for maintaining a continuing nuisance or taking their property without compensation in regard to the flooding from the stream through their property. For that reason, cases cited by appellants, such as *Reid v. Gwinnett County,* 242 Ga. 88 (249 SE2d 559) (1978); *Baranan v. Fulton County,* 232 Ga. 852 (209 SE2d 188) (1974); *McFarland v. DeKalb County,* 224 Ga. 618 (163 SE2d 827) (1968); *DeKalb County v. McFarland,* 223 Ga. 196 (154 SE2d 203) (1967), are inapposite.

2. The second question before us is whether the breaching of Silver Lake Dam by the county, which caused an increase in the flow of water through the stream of which the lake is the source, constituted a taking of appellants' property.

On November 7, 1977, as a result of the tragic loss of life caused by the failure of the dam on Kelly Barnes Lake in Stephens County, the Governor's Task Force on Dam Safety was created for the purpose of identifying possible future dam failures in Georgia and recommending alternative corrective measures. Shortly thereafter it was determined by Georgia's Civil Defense Office and the U. S. Army Corps of Engineers that the dam at Silver Lake was in a dangerous condition and that it should be lowered to facilitate closer inspection. By December 15, 1977, the lake had been lowered some 20 feet, and the DeKalb County Commission Chairman informed the Governor's office that he was requiring that the lake level be maintained 20 feet down until an adequate spillway was provided to guard against the hazard posed by the lake's remaining too full. In late January 1978, because heavy rains caused the lake to rise within 5 feet of the top of the dam, county and state officials, as well as the Corps of Engineers, became concerned for the stability of the dam should it overtop. Pumping was begun to lower the dam. On January 27, 1978, the Chairman of the Governor's Task Force on Dam Safety recommended breaching of the dam. The Corps of Engineers and the State concurred in recommending that breaching was necessary since during the heavy rains the drain pipe was inadequate to lower the dam and keep it at a safe level. The primary concern was for the safety of the residents in the area of the lake. On January 31, 1978, the Chairman of the DeKalb County Board of Commissioners declared a state of emergency and authorized the breaching of the dam. The

record contains a letter from Mr. Lewis commending the county for its action in averting a disaster and expressing the hope that the dam be breached as soon as possible in order to assure safety of the area residents. Finally on February 7, 1978, the Governor, acting pursuant to the Georgia Civil Defense Act, 1951 Ga. Laws, p. 224 (former Code Ann. § 86-1801 et seq.), declared a state of emergency in regard to Silver Lake Dam and ordered the Department of Transportation and Department of Natural Resources to assist DeKalb County in taking necessary action, including taking temporary possession of the dam and carrying out any structural changes necessary to insure the safety of downstream residents.

This chain of events clearly shows that the county in breaching the dam acted pursuant to its police powers. The provisions of the Constitution of Georgia, Art. I, Sec. III, Par. I (Code Ann. § 2-301), prohibiting the taking of private property for a public purpose without compensation have no relevance to the exercise of the police power by the state or its political subdivisions. *McCoy v. Sanders,* 113 Ga. App. 565 (148 SE2d 902) (1966). Therefore, the increased water flow through the appellants' property caused by breaching of Silver Lake Dam did not constitute a taking within the meaning of the Constitution. Further, since the breaching of the dam was a necessary and lawful exercise of the police power, the breaching could not constitute a nuisance. Clearly, therefore, the increased flow of water cannot constitute a continuing nuisance. Indeed, the Constitution of Georgia, Art. IX, Sec. IV, Par. III (Code Ann. § 2-6103) prohibits a county's spending public funds to improve private property. Since the record indicates that Silver Lake and Silver Lake Dam are private property (although their owner may be unknown) there is a real question whether in the absence of an emergency or condemnation of the property the county could make further structural changes in the dam.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 2, 1983.

*William Boyd Lyons,* for appellants.
*George P. Dillard, Richard W. Calhoun,* for appellee.