S96A1379. TEAGUE v. CITY OF CANTON.
(482 SE2d 237)

BENHAM, Chief Justice.

Appellant Charles Teague and others were the developers of a subdivision called "Governor's Walk" in the City of Canton ("City"). Teague also owns at least one of the lots in the subdivision. In 1995, the City filed condemnation proceedings to secure a sanitary sewer easement across a lot in Governor's Walk owned by Teague in order that the developer of an adjoining subdivision might construct a sewer line connecting the new subdivision's sewer system with the existing sanitary sewer system serving Governor's Walk which, in

turn, is connected to the City's sewer system.[1] In a verified complaint for injunctive relief, Teague sought to restrain the City and its agents from building the sewer line across his lot and tapping into the existing sewer line, alleging that he, not the City, owned the sanitary sewer system which serves Governor's Walk. Teague asserted that the City's grant of permission to the adjoining developer to tap into the existing sewer system purportedly owned by Teague constituted an unconstitutional taking of property. Three days after Teague filed his complaint, the trial court granted an interlocutory injunction against the City.

Thereafter, the trial court held a hearing which culminated in the dissolution of the injunction after the trial court ruled that the City, and not Teague, owned the sanitary sewer line which serves Governor's Walk. After opining that both the developers and the City had engaged in "shoddy and lax practices," the trial court found that Teague and his co-developers had made an express offer of dedication of the subdivision's streets and sewer system and that the City had accepted formal dedication of the streets, but had declined expressly to accept the dedication of the sewer system which the City believed to be substandard. The trial court went on to find that the City, by its actions, had impliedly accepted the offer of dedication of the sewer system. In his sole enumeration of error, Teague asserts that the trial court erred when it dissolved the interlocutory injunction on the basis of its finding that the City had impliedly accepted the dedication of the sewer system.[2]

1. The grant or denial of injunctive relief is a matter within the discretion of the trial court, and appellate review of the trial court's decision is limited to a determination of whether the trial court abused its discretion. See *Chicagoland Vending v. Parkside Ctr., Ltd.,* 265 Ga. 318 (454 SE2d 456) (1995).

2. "To prove a dedication of land to public use, there must be an offer, either express or implied, by the owner of the land, and an acceptance, either express or implied, by the appropriate public authorities or the general public. [Cits.]" *Smith v. State of Ga.,* 248 Ga. 154, 158 (282 SE2d 76) (1981). The trial court found that the owner/developer of Governor's Walk made an express offer of dedica-

---

[1] According to Mr. Teague's testimony, the developer of the adjacent subdivision plans to tap into the Governor's Walk sewer line approximately 200 feet from the point the Governor's Walk line joins the City's sewer line.

[2] Faced with an expanding population base and a capital financing crisis, a local government may employ non-traditional means in order to provide infrastructure improvements in new developments by requiring a developer to make an intradevelopmental dedication of such items as sewer and water lines, roads, sidewalks, and recreational and educational facilities. The Expanding Circle of Exactions: From Dedication to Linkage, 50 Law and Contemporary Problems, p. 69.

tion when the land was subdivided into lots and a signed deed and plat showing the lots with designated streets and water and sewer systems were recorded in January 1988. Id. Because the quit-claim deed recorded by the owner in December 1991 conveyed to the City only the grantor's interest in the platted roadways and their right of way,[3] the trial court determined that the City had expressly accepted the offer of dedication as to the streets, and had expressly declined to accept dedication of the water and sewer system.[4]

3. After recognizing that the City had expressly declined Teague's offer of dedication of the sewer system, the trial court concluded that the City had *impliedly* accepted the offer of dedication. Where an owner of land makes an express offer of dedication of a particular portion of property for use by the public, the acceptance of that offer may be shown by any act of the municipality recognizing the existence of the public way as a public way and treating it as property of the City. *Young v. Sweetbriar, Inc.*, 222 Ga. 262 (1) (149 SE2d 474) (1966). While working or maintaining the property by the legally constituted authority is the usual method of manifesting acceptance by the governmental entity, it is the government's exercise of dominion and control of the subject of the express offer of dedication which indicates acceptance of the dedication. *Adams v. Richmond County*, 193 Ga. 42, 48 (17 SE2d 184) (1941); *Hillside Cotton Mills v. Ellis*, 23 Ga. App. 45 (2) (97 SE 459) (1918).

In the case at bar, the trial court determined that the City had impliedly accepted the offer of dedication by means of its acceptance of sewer tap-on fees from lot owners, its assurance to the lot owners that the City would maintain the sewer system, and its assessment of fees for use of the sewer system. Teague contends the City could not impliedly accept the offer of dedication after it had expressly declined the offer. We conclude, however, that the City, by its exercise of dominion and control over the sewer lines, impliedly accepted the

---

[3] In May 1990, the City had informed Teague by letter that only the water and sewer lines along one street in the platted development were acceptable to the City. In February 1991, Teague was told by the City that "[t]he entire sewer collection system in the development" did not meet the City's standards, and that the City would accept dedication of the sewer system when all of the system's problems were resolved. In light of the cost of the sewer system modifications required by the City, Teague did not make the necessary changes.

[4] Our appellate analysis is necessarily limited by the findings of fact and conclusions of law made by the trial court and not contested on appeal. Accordingly, our consideration of Teague's enumerated error is based on the trial court's determination that the City had expressly rejected the developers' offer of dedication of the sewer system. While the City, in response to Teague's enumerated error, claims that the facts do not support the conclusion that it repudiated the offer of dedication of the sewer system, we are bound by the trial court's determination since the City did not make its concerns about the trial court's finding the subject of a cross-appeal.

offer of dedication *before* it rejected Teague's offer of dedication by having him execute a quit-claim deed transferring ownership of the roadways only.

The record reflects that the City issued sewer tap-on permits to lot owners in Governor's Walk after the 1988 offer of dedication and before Teague executed the quit-claim deed in December 1991. The City also processed the sewage that flowed through the disputed sewer lines, and charged lot owners a fee for the service. Teague testified he was aware that the City had issued tap-on permits since 1988 and had assumed the homeowners were being charged by the City for processing the sewage. Despite having taken these actions, the City informed Teague in February 1991 that the development's sewer system was substandard and the City would not accept dedication of the sewer system until all the sewer collection system problems were resolved. When Teague took no action to bring the system up to standards, the City went about resolving the sewer line problems: in August 1991, it executed a "Confirmation of Agreement" with one subdivision lot owner who had been denied a building permit in which agreement the City stated that it would continue to maintain the existing sewer system and that lot owners could use the existing sewer system so long as each lot owner installed a septic tank for solid waste collection. Two months later, and approximately three months before Teague executed the quit-claim deed, all the lot owners were informed by the City that it was "acceptable" to use the existing sewer system for liquid waste as long as each property owner installed a septic tank to receive solid waste. By authorizing lot owners to tap on to the Governor's Walk sewer line, by processing the sewage that entered the City's sewer system via the Governor's Walk sewer lines, and by charging the Governor's Walk lot owners a fee for sewer service, the City exercised sufficient dominion and control over the Governor's Walk sewer lines to accept the developer's express offer of dedication. See *Ellis v. Mayor &c. of Hazlehurst*, 138 Ga. 181, 184 (75 SE 99) (1912).

We conclude that the trial court did not err when it determined that the City had impliedly accepted Teague's express offer of dedication and consequently, that the trial court did not abuse its discretion when it dissolved the restraining order enjoining the City from permitting the adjacent subdivision developer from tapping into the sewer line that served Governor's Walk.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 3, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*Michael J. Kramer, Gary O. Walker,* for appellant.

*Eugene B. Chambers, Jr., William G. Hasty, Jr., Patricia B. Ball,* for appellee.