## A95A1274. HIBBS et al. v. CITY OF RIVERDALE.
## A95A1275. BROWN v. CITY OF RIVERDALE.
### (490 SE2d 436)

RUFFIN, Judge.

These suits for recovery of damages caused by a flooding drainage retention pond were originally considered by this Court in *Hibbs v. City of Riverdale*, 219 Ga. App. 457 (465 SE2d 486) (1995). In that opinion, we affirmed the trial court's grant of summary judgment to the City of Riverdale ("the City") on James and Vicki Hibbs' and Cynthia Brown's separate suits for nuisance and negligence. Briefly, plaintiffs Brown and Hibbs claimed that the City was responsible in nuisance for floods which resulted from a drainage pond improperly designed or built by Hooker Homes ("Hooker"), the company which developed the subdivision where Brown and the Hibbses lived. Our earlier decision contains a more complete recitation of the facts surrounding these cases.

In *Hibbs*, we did not find it necessary to address whether the City had assumed responsibility for the drainage pond which caused the flooding at issue. Id. at 458. The Supreme Court granted certiorari on the nuisance issue and, in *Hibbs v. City of Riverdale*, 267 Ga. 337 (478 SE2d 121) (1996), reversed our decision. That Court held that "where a municipality negligently . . . undertakes to maintain a sewer or drainage system which causes the *repeated* flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable. [Cits.]" (Emphasis in original.) Id. at 338. The Court then remanded these cases and directed this Court to determine if any material issue of fact exists as to one issue: whether the City's "actions in regard to the storm drainage system constituted such exercise of control or acceptance so as to establish a duty on the part of the City to adequately maintain it." Id. at 339.

In making the necessary determination, we follow the dictates of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) and review the record de novo to determine if the evidence, and all inferences from the evidence, show any question of material fact. If no question of fact exists, and the evidence at hand is insufficient to support an essential element of the plaintiffs' case, then summary judgment for the defendant is appropriate. Id.

As the Supreme Court noted, the City assumed no responsibility for any nuisance created by the subdivision's storm drainage systems merely because it approved the construction project. *Hibbs*, 267 Ga. at 338; see also *Fulton County v. Wheaton*, 252 Ga. 49, 50 (1) (310 SE2d 910) (1984). The plaintiffs, however, point to other facts which, they claim, show the City "impliedly accepted" responsibility for maintaining the stormwater drainage system at issue.

The plaintiffs argue that in January 1988, Hooker recorded, and the City approved, a plat of the subdivision which showed the retention pond as an easement and dedicated "to the use of the public forever all streets, drains, easements and public places thereon shown. . . ." We agree that this plat shows Hooker made an offer to dedicate the retention pond to the City. See *Smith v. Gwinnett County*, 248 Ga. 882, 885 (2) (b) (286 SE2d 739) (1982). However, a city does not assume responsibility for a property dedicated to public use unless it has *accepted* that dedication, and such acceptance may be direct or implied. Id. "While working or maintaining the property by the legally constituted authority is the usual method of manifesting acceptance by the governmental entity, it is the government's exercise of dominion and control of the subject of the express offer of dedication which indicates acceptance of the dedication. [Cits.]" *Teague v. City of Canton*, 267 Ga. 679, 681 (3) (482 SE2d 237) (1997). Any act by the governing authorities showing acceptance will suffice to complete the dedication. *Bryant v. Kern & Co.*, 196 Ga. App. 165, 167 (1) (395 SE2d 620) (1990).

The question of whether a municipality has accepted a dedication to public use is usually for the factfinder to decide. See *Johnson & Harber Constr. Co. v. Bing*, 220 Ga. App. 179, 182 (2) (469 SE2d 697) (1996). In this case, however, missing from the record are any facts to support an inference that the City exercised "dominion and control" over the property or otherwise "accepted" the dedication to public use. Although the City certainly required Hooker to build its drainage systems according to code and enforced those requirements with regular inspections, that exercise of regulatory power does not make the City responsible for maintaining the development. See *Lewis v. DeKalb County*, 251 Ga. 100, 101 (1) (303 SE2d 112) (1983), in which the Supreme Court held that the county did not assume responsibility for maintaining a culvert by requiring a contractor to use a certain type of pipe.

Plaintiffs have pointed to instances in which City officials required *Hooker* to correct problems with the subdivision's drainage systems, but they have noted only one act by *the City* which they argue should be construed as an act of "control." After the Hibbs and Brown properties experienced flooding in 1991, Mr. Hibbs complained to the City's director of public works, who met with Mr. Hibbs and commissioned engineers to perform a study of the retention pond. The director of public works told Mr. Hibbs that he would make the problem "his number one priority," leading Hibbs to believe the City was responsible for the problem. However, the record is clear that the public works director was required to leave any decisions regarding the property to the City manager and council. The City did not take any of the corrective measures this study recommended. We

do not believe the mere fact that the City investigated the problem shows it exercised any "dominion or control" over the property, especially in light of the City's need to ensure that Hooker had complied with its regulations. Neither is the City estopped by the acts and statements of its public works director, as he had no authority to bind the City. See OCGA § 45-6-5; *City of Atlanta v. Black*, 265 Ga. 425 (457 SE2d 551) (1995).

The fact that the City required Hooker to post a "maintenance bond" and corresponding letter of credit, likewise, does not show the City accepted responsibility for the subdivision's retention pond. City regulations required a one-year maintenance bond sufficient to cover one-third of the construction cost of *all* subdivision streets and drainage systems. This case differs from the facts of *Bryant*, supra, in which we found a maintenance bond requirement evidenced an intent on the part of local government to accept the street at issue. Here, the same city regulations also stated that the City would *not be responsible* for "any drainage outside of the right-of-way or for any drainage leading from drop inlets, catch basins, or surface drainage." Moreover, in *Bryant* the government itself acted to maintain the road at issue. Here, no evidence shows the City performed any maintenance on the retention pond or its related drainage systems. In this case, the requirement that a developer post a maintenance bond for the benefit of subdivision residents and the public does not create an inference that the City exercised control of the stormwater drainage systems.

The trial court properly granted summary judgment to the City because no evidence shows the City "maintained" or "controlled" the nuisance drainage system.

*Judgments affirmed. Pope, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur, but we should point out to the extent they cite with approval or depend on a principle which the Supreme Court concluded is not the law.

We originally ruled that the City of Riverdale could not be liable because mere negligence is insufficient to support a cause of action for nuisance, citing *City of Lawrenceville v. Macko*, 211 Ga. App. 312, 316-317 (439 SE2d 95) (1993). *Hibbs v. City of Riverdale*, 219 Ga. App. 457, 458 (1) (465 SE2d 486) (1995). The Supreme Court held that to be incorrect; if the city acquires a *duty* to maintain property, then a failure to do so (i.e., negligence) constitutes nuisance *if* it is continuing or repetitious and the city can be held liable. It cannot be held liable for a single act of negligence under the theory of nuisance, however, because in order to constitute nuisance it must be a contin-

uing or repetitious act which is being complained of. *Hibbs v. City of Riverdale*, 267 Ga. 337 (478 SE2d 121) (1996).

*City of Lawrenceville* quotes the erroneous principle also. Although the court initially applies it only in a "moreover" context, 211 Ga. App. at 316, quoting the problematic principle from *Denson v. City of Atlanta*, 202 Ga. App. 325, 327 (414 SE2d 312) (1991), the Court finally holds: "Even assuming arguendo that the City was responsible for maintaining the drainage system, viewing the evidence in the light most favorable to the verdict, the evidence showed at most that the City was negligent, and, negligence is insufficient to support a cause of action for nuisance. *Denson*, supra." Id. at 317 (3). So *City of Lawrenceville* reached the right result, because "there [was] no evidence that the City exercised any control over this drainage system." Id. It was right for this reason but wrong in the reason the Court gave.

*Denson*, a whole court case, seems to be the source of the error. It misstates a principle which it says is found in *City of Atlanta v. Roberts*, 133 Ga. App. 585 (211 SE2d 615) (1974). *Denson* states, "If the act, omission, or defect alleged to constitute a nuisance is merely negligence, no matter how egregious the result, the municipality will not be liable for damage suffered." Id. at 327. A correct statement would have been, "If the act, omission, or defect alleged to constitute a nuisance is merely *a single isolated act of* negligence, no matter how egregious the result, the municipality will not be liable for damage suffered." See the dissent, which analyzes the case in accordance with *City of Bowman v. Gunnells*, 243 Ga. 809 (256 SE2d 782) (1979), the same case the Supreme Court uses in *Hibbs*, and concludes there was evidence of nuisance so as to support the verdicts because all three guidelines were met.[1]

*Denson*'s statement misstates what *City of Atlanta v. Roberts* stands for. It upheld the grant of partial summary judgment to defendant on plaintiff's nuisance claim because only "a single isolated act of negligence" was shown, " 'and this is not sufficient to show such a negligent trespass constituted a nuisance.' " *City of Atlanta v. Roberts*, supra at 587 (2). We also held that the trial court did not err in denying summary judgment to defendant city "as to the negligence phase of the case in obstructing the street." Id. at 587 (1). That was a separate count.

---

[1] Note that with respect to the first *Gunnells* guideline, which is that "[t]he defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence," the dissent understands "degree" to relate to quality of the defendant's act and cites evidence that the degree of dangerousness was acute. The Supreme Court in *Hibbs*, supra at 338 (1), however, says that the first guideline means quantity: "the defect or degree of misfeasance must exceed negligence (as distinguished from a single act)." Thus it would appear that the breach of duty involved need not be egregious.

The record should be set straight, else the error be compounded.

DECIDED JULY 15, 1997 —
RECONSIDERATION DENIED AUGUST 5, 1997 —

*James A. Eidson*, for appellants.
*Foster & Foster, Larry A. Foster, Freeman, Mathis & Gary, Theodore Freeman, Donald J. Grate, Nena K. Puckett*, for appellee.