**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 16, 2015**

# In the Court of Appeals of Georgia

A15A1490. SUMMER et al. v. SECURITY CREDIT SERVICES,
   LLC.

MILLER, Judge.

Security Credit Services, LLC ("Security Credit"), filed suit against Debbie and
Robin Summer to collect on a credit card debt owed by the Summers. The Summers
answered and also filed counterclaims under the Fair Debt Collection Practices Act
("FDCPA"), 15 USC § 1692 et seq., and the Georgia Fair Business Practices Act
("GFBPA"), OCGA § 10-1-390 et seq.[1] The parties filed cross-motions for partial
summary judgment on the Summers' counterclaims, and the trial court granted
Security Credit's motion and denied the Summers' motion. On appeal, the Summers

---

[1] The Summers had also counterclaimed that Security Credit violated the
Telephone Consumer Protection Act ("TCPA"), but they dismissed this counterclaim
without prejudice.

contend that the trial court erred in granting summary judgment to Security Credit and denying their motion for summary judgment. For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant.

(Citations and punctuation omitted.) *Wirth v. Cach, LLC*, 300 Ga. App. 488, 488-489 (685 SE2d 433) (2009).

So viewed, the evidence shows that in August 2006, Wells Fargo Bank, N.A. ("Wells Fargo") issued a credit card to the Summers, who thereafter used the credit card to purchase goods and services. The Summers subsequently defaulted on the credit card account.

In April 2011, Security Credit and Wells Fargo executed a "Flow Agreement for Purchase and Sale of Charged-Off Accounts" ("Purchase Agreement"). The Purchase Agreement provided that beginning in April 2011, and continuing monthly for six months, Security Credit would purchase a list of accounts generated by Wells Fargo. Pursuant to the Purchase Agreement, Security Credit bought the Summers' credit card account on or about June 24, 2011. The Summers had an outstanding balance of $15,581.21 at the time. In July 2011, Security Credit sent its first

correspondence to the Summers informing them that Security Credit was attempting to collect on the Wells Fargo credit card account.

In December 2012, Security Credit filed the instant lawsuit, seeking to recover the outstanding balance of $15,581.21, plus court costs. In February 2013, after filing suit, but before serving the Summers with the complaint, Security Credit's counsel sent a letter to the Summers informing them that they owed Security Credit $15,787.21, or $206 more than was listed in the complaint, and that Security Credit was willing to settle their debt for a reduced amount. There is no dispute that the additional $206 included the court cost for filing the complaint.

1. On appeal, the Summers contend that the trial court erred in granting summary judgment to Security Credit and denying their motion for summary judgment because, as a matter of law, Security Credit's actions violated the FDCPA. We disagree.

> The [FDCPA] was enacted by Congress to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses. . . . The [FDCPA] provides a civil cause of action against any debt collector who fails to comply with the requirements of the Act[.]

(Citations and punctuation omitted.) *Arrow Financial Svcs., LLC v. Wright*, 311 Ga. App. 319, 322 (2) (715 SE2d 725) (2011).

The FDCPA forbids a debt collector from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 USC § 1692f (1). The FDCPA also prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt, including "false representation of . . . the character, amount, or legal status of any debt[.]" 15 USC § 1692e (2) (A). A debt collector is also prohibited from using any false representation or deceptive means to collect or attempt to collect any debt, 15 USC § 1692e (10), and may not use unfair or unconscionable means to collect or attempt to collect any debt, 15 USC § 1692f. The test for whether a debt collector's conduct is "deceptive," "misleading," "unconscionable," or "unfair" under the FDCPA is not whether the particular plaintiff-consumer was deceived or misled; but rather, "whether the 'least sophisticated consumer' would have been deceived by the debt collector's conduct." (Citations omitted.) *Crawford v. LVNV Funding, LLC*, 758 F3d 1254, 1258 (II) (11th Cir. 2014).

(a) The Summers contend that Security Credit misrepresented that it was validly assigned their Wells Fargo credit card account. The Summers do not claim on

4

appeal that any representation made directly by Security Credit regarding the assignment is actionable under the FDCPA. Rather, the Summers argue that Security Credit filed affidavits containing false statements regarding the date of the assignments and that the filing of these allegedly false affidavits was actionable under 15 USC § 1692e. Their claim has no merit.

A debt collector's false or misleading representation must be "material" in order for it to be actionable under § 1692e of the FDCPA. See, e.g., *Donohue v. Quick Collect, Inc.*, 592 F3d 1027, 1033 (II) (B) (9th Cir. 2010); *Hahn v. Triumph Partnerships LLC*, 557 F3d 755, 758 (7th Cir. 2009); *Miller v. Javitch, Block & Rathbone*, 561 F3d 588, 596 (II) (B) (6th Cir. 2009). The purpose of the FDCPA is to "provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn*, supra, 557 F3d at 757-758. "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA–even if it is false in some technical sense." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F3d 643, 645-646 (7th Cir. 2009). With these principles in mind, we address the Summers' claims regarding the assignment.

(i) The Summers first challenge the assignment based on purported inconsistent statements regarding the date Wells Fargo "charged-off" the Summers' account. The Summers argue that the June 24, 2011 "Bill of Sale" shows a "charge-off" date of April 15, 2011, whereas an affidavit from Robert Larson, a Wells Fargo sales liaison, averred that the date was April 30, 2011. Contrary to the Summers' argument, the cited "Bill of Sale" language refers to the date of the Purchase Agreement, not the date of the "charge-off." Thus, the Summers have not demonstrated that there is anything false about the "Bill of Sale" language.

(ii) The Summers next challenge the validity of the assignment based on inconsistent statements regarding its date. In particular, the Summers challenge the veracity of the "Affidavit of Sale" prepared by Carla Hawkins, a Wells Fargo employee, because she swore to events that had not yet occurred, and she lacked personal knowledge about the events since she did not review any individual records or statements.[2] Similarly, the Summers challenge the averment of Wells Fargo

---

[2] Hawkins signed the Affidavit of Sale on June 21, 2011, attesting that the sale transpired on June 24, 2011. Hawkins deposed that she often needed to sign sales affidavits before the anticipated sale date because such affidavits were part of sales file that needed to be reviewed and approved by other parties, often in different states, before finalizing the sale. She also deposed that, in her experience at Wells Fargo, none of the scheduled sales ever had to be postponed or rescheduled. While Hawkins testified that she did not personally review the Summers' credit card statements, she

6

employee Larson that the assignment occurred on June 27, 2011, because he did not confirm that the assignment actually transpired that day.[3]

Even assuming that one of the Wells Fargo employees provided a false statement by reporting that the assignment transpired on June 24, 2011, when it actually occurred on June 27, 2011, or vice versa, the Summers have not alleged, much less shown, that they – or anyone else – were "misled, deceived, or otherwise duped" by the different dates given for the assignment. See *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F3d 1291, 1307 (III) (B) (2) (11th Cir. 2015) (false statements were not actionable under FDCPA where there was no proof that the statements "misled, deceived, or otherwise duped" any consumer).

_____

did not make any statements about the particulars of their account in the Affidavit of Sale, other than the fact that it was sold to Security Credit.

[3] Larson admitted that Security Credit represented to him that the sale occurred on June 27 when it requested an affidavit of debt to show that the Summers' account was in default. He testified, however, that the date represented was within the general time-frame of the sale because he examined documentation showing a "cutoff date" of June 17, 2011 for the Summers' account, meaning that a sale was pending, and that the actual sale would generally be completed within five or six business days. Further, the Purchase Agreement provided that on or prior to each cutoff date, which was defined as five business days prior to the monthly closing date, Wells Fargo was to provide Security Credit with a schedule of the accounts that were to be sold.

In support of their argument that the filing of the Wells Fargo affidavits was actionable under 15 USC § 1692e, the Summers rely on *Midland Funding, LLC v. Brent*, 644 FSupp2d 961, 970 (III) (A) (3) (N. D. Ohio 2009), which held that a debt collector, who claimed to have been assigned the consumer's credit card account, made material false statements that he had personal knowledge of the consumer's debt. Unlike the consumer in *Midland*, who claimed that she was unaware of any obligation owed to the credit card issuer, the Summers readily admitted that they had a credit card account with Wells Fargo, and that they owed a monetary obligation on that account. See id.

Moreover, Security Credit not only presented the statements from the Wells Fargo employees, but it also presented an affidavit and deposition testimony from a company vice president who confirmed that the Summers' credit card account was assigned to Security Credit. The Summers presented no evidence contradicting the fact that the assignment transpired in June 2011, and they presented no evidence that the different reported dates for the assignment frustrated their ability to intelligently choose their response. See *Donohue*, supra, 592 F3d at 1034 (II) (B) ("In assessing FDCPA liability, [courts] are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate

8

a customer's ability to intelligently choose his or her response.") (citation omitted).
Therefore, the Summers' FDPCA claim based on the filing of the subject affidavits fails.

(b) The Summers also contend that the February 2013 letter sent by Security Credit notifying them that it was willing to settle their debt for a reduced amount violated 15 USC § 1692e and 1692f. Specifically, the Summers argue that Security Credit misrepresented that they owed Security Credit $15,787.21, because the amount owed on the credit card account was $15,581.21, a difference of $206. The Summers rely on the fact that when the February 2013 letter was sent, they had not been served Security Credit's complaint, the filing of which occurred in December 2012 and cost $206. Their argument has no merit.

The FDCPA requires that debt collectors state "the amount of the debt" that they are seeking to collect from the consumer. 15 USC § 1692g (a) (1). The debt collector's letter must state the amount of the debt "clearly enough that the recipient is likely to understand it." *Chuway v. Nat. Action Financial Svcs. Inc.*, 362 F3d 944, 948 (7th Cir. 2004). The FDCPA prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt" including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental

9

to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 USC § 1692f (1). When a debtor has contractually agreed to pay attorney fees and collection costs, however, a debt collector does not violate the FDCPA by stating those fees and costs and including those amounts in the collection letter. See *Fields v. Wilber Law Firm, P.C.*, 383 F3d 562, 565 (I) (A) (7th Cir. 2004).

Here, Security Credit's demand that the Summers pay its court costs was based on language in the Wells Fargo credit card agreement providing, "To the extent not prohibited by law, if you are in default, you agree to pay our collections costs, attorney's fees and court costs incurred in enforcing our rights under this Agreement." Based on this plain, unambiguous language, the Summers agreed to pay court costs incurred for collection efforts on a defaulted account. Accordingly, Security Credit did not violate the FDCPA by including those amounts in the February 2013 letter. *Fields*, supra, 383 F3d at 565 (I) (A).

The Summers nevertheless argue that the additional $206 amount sought by Security Credit for court costs violated the FDCPA because it was not separately itemized. In support of their argument, the Summers rely on *Fields*, which held that the plaintiffs sufficiently stated a FDCPA claim to survive a motion to dismiss

because the debtor's failure to itemize or segregate attorney fees authorized by contract "*could be construed* as falsely stating the amount of debt," and "*could conceivably* mislead an unsophisticated consumer." (Emphasis supplied.) *Fields*, supra, 383 F3d at 565-566 (I) (A), (B). Compare *Singer v. Pierce & Assoc., P.C.*, 383 F3d 596, 598 (I) (7th Cir. 2004) (where a debt collector itemizes or segregates the court costs or attorney fees in the collection letter, there is no FDCPA violation); *Shapiro v. Riddle & Assocs. P.C.*, 351 F3d 63, 64 (2d Cir. 2003) (same).

While the plaintiffs in *Fields* could rely only on the allegations on their complaint to defeat a motion a to dismiss, the Summers could not. In moving for summary judgment on the Summers' counterclaims, Security Credit argued that there was an absence of evidence establishing an FDCPA violation because the Summers made only a cursory allegation.

> A defendant who will not bear the burden of proof at trial need only show an absence of evidence to support an essential element of the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Adamson v. Gen. Electric Co.*, 303 Ga. App. 741, 744 (3) (694 SE2d 363) (2010). Thus, even assuming that Security Credit's failure to itemize the court costs in the February 2013 letter was a false statement, the

11

Summers had to point to specific evidence that the omission was material in order to have an actionable FDCPA claim. See, e.g., *Donohue.*, supra, 592 F3d at 1033 (II) (B). They have failed to do so.

For purposes of this appeal, the Summers neither dispute the amount owed on the credit card account ($15,581.21), nor the amount of the court costs ($206). Since the total amount claimed to be owed has not been refuted, Security Credit's omission in the February 2013 letter was not material. See *Hahn*, supra, 557 F3d at 757 (challenged statement about character of debt was not material where the total amount due was not disputed because "[a] dollar due is a dollar due."); *Donohue*, supra, 592 F3d at 1034 (II) (B) (although complaint mischaracterized the debt, the total amount due was correct, and the consumer did not "articulate[] any different action she might have chosen" if the complaint properly and accurately segregated the nature of the debt). Compare *Lox v. CDA, Ltd.*, 689 F3d 818, 820-821 (I), 827 (II) (7th Cir. 2012) (collection letter stating debtor could owe attorney fees if legal action were taken to collect debt – i.e., *before* lawsuit commenced – was material statement because the risk of having to pay attorney fees would have influenced debtor's decision to contest the debt). Consequently, the trial court did not err in granting summary judgment to

Security Credit and denying the Summers' motion for summary judgment on their counterclaims.

2. The Summers concede that their GFBPA state-law claims are based on alleged FDCPA violations. Having concluding that the Summers' FDCPA claims fail as a matter of law, they cannot prevail on their state-law claims either.

*Judgment affirmed. Andrews, P. J., and Branch, J., concur.*