**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 23, 2019**

# In the Court of Appeals of Georgia

A19A1295. KLINGENSMITH et al. v. LONG COUNTY, GEORGIA.

MILLER, Presiding Judge.

This appeal stems from a negligence and nuisance action that various residents who live in or around the Vickers Hill subdivision filed against Long County, Georgia ("the County"), due to the repeated flooding of the subdivision. The trial court granted summary judgment to the County on various grounds that included sovereign immunity, failure to comply with the presentment requirement of OCGA § 36-11-1, and the merits. The plaintiffs now appeal from the trial court's summary judgment order, challenging each of the grounds on which the trial court relied in its order. We conclude that (1) the plaintiffs' negligence claims are barred by sovereign immunity; (2) any claims of a permanent nuisance or trespass are barred by the one-

year presentment requirement of OCGA § 36-11-1; and (3) the plaintiffs failed to produce evidence to create a genuine issue of material fact on a claim for continuing nuisance. We therefore affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citation and punctuation omitted.) *Summer v. Security Credit Svcs., LLC*, 335 Ga. App. 197, 197-198 (779 SE2d 124) (2015).

So viewed, the record shows that, around 2006, Georgia Coastal Land Company acquired land in Long County, Georgia, with the intent to develop and build a residential subdivision called Vickers Hill. Georgia Coastal had P.C. Simonton & Associates, Inc., a civil engineering firm, prepare a preliminary plat for the subdivision to submit to the County for approval. The County approved the plat in April 2007, and, at that time, Georgia Coastal began selling lots to private parties for development and construction.

Soon after construction began in Vickers Hill, standing water became an issue for many of the residents of the subdivision. In 2014, after receiving many complaints of the flooding from the residents of Vickers Hill, the County studied the issue of

2

flooding at the subdivision and issued a report. The report concluded that the development of the subdivision increased the total runoff from the area by approximately 25 cubic-feet-per-second, which was significantly higher than the 1 cubic-foot-per-second increase that was set by the County's ordinance. This large increase of runoff resulted in a back-up at the culvert on the property of Carl Steen, who lives adjacent to the subdivision at the point where the runoff from the subdivision is released, which served as a major drainage point for the wetlands that are adjacent to the subdivision. The report recommended that the pipes on Steen's property be widened, that various pipes within the subdivision be replaced or widened, and that various ditches and pipes within the subdivision be cleaned and restored to the proper grade.

On March 27, 2015, a notice to the County was sent by counsel on behalf of "several families who reside in and around Vickers Hill Subdivision" who had claims against the county. The notice specified that it was sent to comply with the requirements of OCGA § 36-11-1, and it stated that the residents had claims for the continuing nuisance and trespass caused by the insufficient drainage and resultant standing water, which still had not been fixed and had also led to the deterioration of

3

the roadways within the subdivision. The notice did not identify any of the residents by name.

Steen, Randall and Beth Klingensmith, Walter Pelton, William Karriker, James Wine, and Chester Bradley filed the instant complaint on February 9, 2016, against the County, two fictitious "John Doe" defendants that were alleged to be employees or agents of the County, and P.C. Simonton.[1] Except for Steen, the plaintiffs are all residents of Vickers Hill. The plaintiffs raised the following claims against the County: (1) negligence due to the County's alleged failure to oversee and monitor the development and construction within Vickers Hill, the County's approval of a development plan for the subdivision that violated the County's own regulations, and the County's failure to maintain the roadways and signage within the subdivision; (2) nuisance arising from the alleged failure to take sufficient action to address the extensive flooding and standing water problems in the subdivision; and (3) trespass for the water that intruded upon and remained on the plaintiffs' properties due to the inadequate drainage systems in the subdivision. Service was effected on the County on February 20, 2016.

---

[1] The plaintiffs later voluntarily dismissed their claims against P.C. Simonton without prejudice.

Following discovery, the County moved for summary judgment on all claims. After a hearing, the trial court granted the County's motion for summary judgment. The trial court concluded that (1) the Plaintiffs' ante litem notice was insufficient under OCGA § 36-11-1 because the notice did not identify any of the claimants; (2) the four-year statute of limitations (OCGA § 9-3-30 (a)) barred the claims for negligence and trespass; (3) the negligence claim was barred by sovereign immunity; (4) the nuisance claim for the alleged flooding and standing water failed as a matter of law because the record showed that the County did not construct or maintain the drainage system; and (5) the nuisance claim for the condition of the roads failed as a matter of law because the County did not own the roads. This timely appeal followed.

1. The plaintiffs first argue that the trial court erred in its conclusion that their negligence claims were barred by sovereign immunity because individual government officials may be held personally liable for ministerial acts negligently performed, and they argue that they produced sufficient evidence to show that the County's agents were negligent in following the County's own subdivision regulations in relation to

5

the Vickers Hill subdivision.[2] They further argue that sovereign immunity does not apply because the County was vicariously liable for the actions of its agents. We disagree.

"[S]overeign immunity is the immunity provided to governmental entities and to public employees sued in their official capacities." (Citation omitted.) *Ratliff v. McDonald*, 326 Ga. App. 306, 309 (1) (756 SE2d 569) (2014). On the other hand, "[t]he doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity." (Citation omitted.) *Grammens v. Dollar*, 287 Ga. 618, 619 (697 SE2d 775) (2010). It is true that official immunity afforded to individual public employees is waived in cases where ministerial acts were negligently performed or where official acts were performed with malice or an intent to injure. See id. at 619-620. However, "sovereign immunity and official immunity are not synonymous, but are separate, related doctrines. Sovereign immunity . . . refers to the immunity traditionally granted governmental entites, such as the state or its counties. Official immunity, on the other

---

[2] Because "[s]overeign immunity is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case," *Ambati v. Bd. of Regents of Univ. Sys. of Ga.*, 313 Ga. App. 282, 282 n.3 (721 SE2d 148) (2011), we will address the trial court's determinations as to the County's sovereign immunity first.

hand, is applicable to government officials and employees sued in their individual capacities." (Citations and punctuation omitted.) *Norris v. Emanuel County*, 254 Ga. App. 114, 116 (1) (561 SE2d 240) (2002). Instead, our law is clear that "[a] county may be liable for a county employee's negligence in performing an official function only to the extent the county has waived sovereign immunity." (Citation omitted.) *Ratliff*, supra, 326 Ga. App. at 309 (1).

Thus, to pursue claims against the County, the plaintiffs must point to a waiver of the County's sovereign immunity regardless of whether any individual county official does or does not have official immunity from the plaintiffs' claims.[3] The only waiver they point to is the waiver of sovereign immunity for claims alleging the negligent performance of ministerial duties. That waiver, however, only applies to cities and does not apply to counties. *Rutherford v. DeKalb County*, 287 Ga. App. 366, 367-369 (1) (a), (b) (651 SE2d 771) (2007). Compare OCGA § 36-33-1 (b) ("For neglect to perform or improper or unskillful performance of their ministerial duties,

---

[3] Any claims against the fictitious defendants are not relevant to this appeal because the County's summary judgment motion was made solely on behalf of the County and not on behalf of any fictitious defendants. The trial court's summary judgment order also did not appear to address any claims against the fictitious "John Doe" defendants, and any individual "John Doe" defendants are not parties to this appeal.

[municipal corporations] shall be liable.") with OCGA § 36-1-4 (setting out the sovereign immunity of counties and containing no such waiver for ministerial duties). Because "[a] waiver of sovereign immunity must be established by the party seeking to benefit from that waiver," (Citation omitted.) *Liberty County v. Eller*, 327 Ga. App. 770, 771 (1) (761 SE2d 164) (2014), and the plaintiffs did not (and do not) point to any other purported waiver of sovereign immunity by the County for their negligence claims, they are barred by sovereign immunity.

As the parties correctly point out, however, "the Constitution provides for a wavier of sovereign immunity where a county creates a nuisance which amounts to an inverse condemnation." (Citation omitted.) *Eller*, supra, 327 Ga. App. at 772 (1). Therefore, the plaintiffs' nuisance claims are not barred by sovereign immunity to the extent they constitute an inverse condemnation.[4]

2. In two related claims of error, the plaintiffs also argue that the trial court erred in its conclusion that their nuisance claims were barred by the requisite four-year statute of limitations, OCGA § 9-3-30 (a), and that the trial court erred in

---

[4] While the plaintiffs raised both a nuisance and a trespass claim in addition to their negligence claims, in essence, these claims together are proceeding as an inverse condemnation claim, "[r]egardless of how the various claims are denominated." *Stanfield v. Glynn County*, 280 Ga. 785, 786 (1) (631 SE2d 374) (2006). For ease of reference, we will continue to collectively refer to these claims as nuisance claims.

concluding that they failed to comply with the presentment requirement of OCGA § 36-11-1. We conclude that summary judgment was properly granted on these claims.

(a) We first address whether the plaintiffs complied with the statutory presentment requirement. Under Georgia law, "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or the same are barred." OCGA § 36-11-1. "Substantial compliance is all that is required to meet the statutory notice requirements" of OCGA § 36-11-1. (Citation omitted.) *City of Columbus v. Barngrover*, 250 Ga. App. 589, 596 (4) (552 SE2d 536) (2001).

The trial court correctly ruled that the purported presentment notice that the plaintiffs sent to the county on March 27, 2015, was insufficient to meet this statutory requirement because it did not specifically identify any of the claimants. We find *Campbell v. City of Atlanta*, 117 Ga. App. 824 (162 SE2d 213) (1968) to be controlling in this case. In *Campbell*, we concluded that an ante-litem notice that identified a husband as a tort claimant, but did not identify his wife as a claimant for loss of consortium, was insufficient to meet substantial compliance with the presentment requirement for the wife's claim, even though there was evidence on the notice from which the city defendant could have deduced that the wife had a valid

9

claim as well. Id. at 825. We concluded that "[t]he city is only required to make adjustments with parties who make known their claim *and their identity as claimants*." (Emphasis added.) Id.

Although *Campbell* involved the ante-litem statute for claims against municipalities, and not the statute at issue for claims against counties, we find no reason to deviate from its holding in cases involving claims against counties.[5] The purpose of the presentment statute is to "allow governments the opportunity to investigate potential claims, ascertain the evidence, and avoid unnecessary litigation," *Barngrover*, supra, 250 Ga. App. at 596 (4), purposes that would all be frustrated if claimants did not identify themselves to counties against which they have claims. Finally, there is no indication in the record that the plaintiffs' identities were unknown to the attorney who drafted the notice at the time it was sent. Thus, we

---

[5] Both the county statute and the city statute require only substantial compliance, *Barngrover*, supra, 250 Ga. App. at 596 (4), and neither statute affirmatively requires prospective plaintiffs to identify themselves, see OCGA §§ 36-11-1; 36-33-5, and so the material requirements of the statutes for the purposes of this appeal are identical.

conclude that the March 27, 2015 notice failed to satisfy the statutory presentment requirement.[6]

Nevertheless, although the notice was deficient, we agree with the plaintiffs that their *complaint* was sufficient to meet the statutory presentment requirements of OCGA § 36-11-1, as the complaint clearly identified each of the plaintiffs as claimants and set out the particulars of each of the claims against the County. See *Burton v. DeKalb County*, 202 Ga. App. 676, 677 (415 SE2d 647) (1992) ("[I]f a complaint is filed and properly served within the 12-month time limit, the requirements of [OCGA § 36-11-1] are met."). Accordingly, any of the plaintiffs' claims that accrued within one year of the service of the complaint on the County on February 20, 2016 (the date when the plaintiffs "presented" their claims to the County) would not be barred and would be allowed to proceed.[7]

---

[6] The plaintiffs suggest that, if the County required their identities to investigate the claims, it would have been a trivial matter for the County to use the contact information on the notice to contact the listed attorney. This contention ignores the fact that it is the plaintiffs' burden to provide the County with the substantial information necessary to give notice of the claim. "It was not incumbent upon [the County] to seek out the [unnamed party] to make adjustment of a claim of which it had no notice." *Campbell*, supra, 117 Ga. App. at 825.

[7] The four-year statute of limitations for nuisance and trespass claims would also clearly not apply to bar any of these claims since they would have accrued within one year of the filing of the complaint. See OCGA § 9-3-30 (a).

(b) We therefore turn to the question of whether any of the plaintiffs' claims regarding the standing water problems and allegedly inadequate drainage actually did accrue during that time period. We conclude that the plaintiffs' claims for a permanent nuisance are time-barred and that they have not, as a matter of law, presented a claim for a continuing nuisance.

A county may be liable for a nuisance if that nuisance "rose to the level of an inverse condemnation. Mere negligence is not enough." (Citations omitted.) *Morris v. Douglas County Bd. of Health*, 274 Ga. 898 (1) (561 SE2d 393) (2002). Also, "[a] county is not liable for a nuisance merely because it approved a construction project." (Citations omitted.) Id. "To the contrary, in order to become responsible, a municipality must actively take control over the property in question or accept a dedication of that property." *City of Atlanta v. Kleber*, 285 Ga. 413, 419 (3) (677 SE2d 134) (2009). To be held liable for nuisance, "[o]wnership of land by the tortfeasor is not an element, but control is; the essential element of nuisance is control over the cause of the harm. The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." (Citation omitted.) *Sumitomo Corp. of Am. v. Deal*, 256 Ga. App. 703, 707 (2) (569 SE2d 608) (2002).

12

Our law distinguishes between two types of nuisances: permanent or continuing. "The classification of a nuisance as continuing or permanent directly controls the manner in which the statute of limitations will be applied to the underlying claim." (Citations and punctuation omitted.) *Eller*, supra, 327 Ga. App. at 772 (2).

> A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run. Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. This action accrues at the time of such continuance, and against it the statute of limitations runs only from the time of such accrual.

(Citation omitted.) Id. at 773 (2).

In the context of drainage systems, a complaint about "the mere presence" of an improperly installed system, pipe, or culvert constitutes a claim for a permanent nuisance. *Kleber*, supra, 285 Ga. at 416 (1). A claim for a permanent nuisance accrues "upon the creation of the nuisance once some portion of the harm becomes observable." (Citation omitted.) *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331,

13

333 (2) (711 SE2d 641) (2011). A claim of permanent nuisance will also accrue if a new harm that was not previously observable occurred within the limitations period, but "a change in degree of harm does not restart the limitation period." (Citations omitted.) *Floyd County v. Scott*, 320 Ga. App. 549, 552 (1) (740 SE2d 277) (2013).

On the other hand, landowners may show a continuing nuisance from improper drainage through evidence that an existing condition, such as a culvert or drainpipe, was improperly maintained. See *Kleber*, supra, 285 Ga. at 417 (1). A plaintiff can proceed on such a claim if he or she can establish that the County maintains the system or that "the [County]'s actions in regard to the storm drainage system constituted such exercise of control or acceptance so as to establish a duty on the part of the City to adequately maintain it." *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996).

Here, the County's report from its investigation into the subdivision's flooding concluded that the development of the subdivision increased the total runoff from the area by around 25 cubic-feet-per-second, which caused a large increase of water that backs-up at the culvert on Steen's property. The plaintiffs did produce evidence that the pipes under Steen's property (which the County maintains) are a main contribution to the problem because they are undersized for the amount of water that

14

now drains from the subdivision. However, it is undisputed that the pipes under Steen's property were installed before the development of Vickers Hill and that the pipes were entirely adequate to handle any runoff before the subdivision's development. These complaints, therefore, all stem from a defective implementation or installation of a permanent nuisance, not of a continuing nuisance, and, thus, these claims accrued when the plaintiffs began observing the standing water problem. See *Oglethorpe Power Corp.*, supra, 289 Ga. at 333 (2); *Kleber*, supra, 285 Ga. at 417 (1). The record is clear that each of the plaintiffs observed problems with standing water on their property before February 2015, which was more than one year before they served the complaint on the County. Thus, all of these claims stemming from a permanent nuisance are barred by OCGA § 36-11-1.[8]

Additionally, the plaintiffs have not presented sufficient evidence to support a claim for a continuing nuisance. First, there is no evidence that the standing water is caused by the County's failure to maintain or upkeep its own water system or that

---

[8] While the plaintiffs produced evidence to show that the drainage problems are getting worse with further development of Vickers Hill, this is "a change in degree of harm" from the standing water problems that already existed, and so these facts would not restart the limitation period or create a new claim of permanent nuisance. See *Floyd County*, supra, 320 Ga. App. at 552 (1).

15

the pipes under Steen's property were inadequately maintained. There was also no evidence presented or that the County took any action beyond approving new development that increased the flooding problem. See *Kleber*, supra, 285 Ga. at 417 (1); *City of Macon v. Macrive Constr.*, 241 Ga. App. 396, 397 (525 SE2d 418) (1999) (no continuing nuisance shown where allegedly inadequate drainage system was complete more than four years prior to the filing of the nuisance suit, and no evidence showed that the city took any action after installation that increased the flooding problem).

Second, the plaintiffs have not presented sufficient evidence from which a factfinder could conclude that the County has exercised control or accepted the duty to maintain the drainage system within the subdivision. The facts that the County approved the subdivision, continues to issue construction permits in the subdivision, and conducted an investigation into the flooding, are insufficient to show control. See *Hibbs v. City of Riverdale*, 227 Ga. App. 889, 890-891 (490 SE2d 436) (1997) (plaintiffs failed to show that city exercised "dominion or control" over drainage system when the city merely approved the development plan, investigated the drainage and issued a report, and used its regulatory authority to require the developer to correct the problems with the subdivision's drainage systems). In addition,

16

although there is evidence that some new ditches were cut through the subdivision in 2012 or 2013, the evidence in the record shows that Georgia Coastal created those ditches at the County's behest, and the County did not create the ditches itself. Finally, the evidence that the County conducted work on Steen's property and allegedly agreed to build a retention pond on Steen's property is not evidence that the County attempted to exercise control over the drainage system within the subdivision itself because it is undisputed that Steen's property is not part of the subdivision and that the County does indeed control the drainage system on Steen's property. While these facts all demonstrate that the County may have started to use its authority to address the flooding issues, we have previously concluded that the fact that a governmental entity uses its regulatory authority to order a developer to take action to address inadequate drainage does not constitute evidence that the governmental entity sought to control the drainage system itself. See id. at 890-891. Thus, the plaintiffs have not presented sufficient evidence of a continuing nuisance such that their claims would have accrued upon each flooding of their property.

Accordingly, summary judgment was properly granted on the plaintiffs' claims of nuisance stemming from the inadequate drainage.

17

(c) Finally, we address whether any of the plaintiffs' claims regarding the conditions of the subdivision's roads accrued during the one-year period before the plaintiffs presented their claims to the County. We similarly conclude that they accrued more than a year prior to service of the complaint and are thus time-barred.

First, any claims regarding the deficient installation of the roads themselves (including the plaintiffs'allegations that the wrong material was used to pave them) are claims that a permanent nuisance was imposed, and such claims are barred by the one-year presentment requirement since they would have accrued before February 2015. See OCGA § 36-11-1; *Kleber*, supra, 285 Ga. at 417 (1).

Second, the plaintiffs presented insufficient evidence that the County exerted control over the roads so as to establish a claim against the County for any deficient maintenance of the roads. In 2012, Georgia Coastal signed a road maintenance agreement wherein it agreed that it "shall maintain the roads in Vickers Hill Subdivision until all the houses in the subdivision have been built and sold, at which time the Long County Board of Commissioners will officially accept and maintain all roadways in said subdivision." The County has not yet accepted any of the roads in the subdivision, and it has not performed any maintenance on the roads in the subdivision. While the County did attempt to get the developer to repair the roads in

Vickers Hill, as noted above, this fact alone is insufficient to establish that it was the County's responsibility to maintain the roads in the subdivision. See *Hibbs*, supra, 227 Ga. App. at 890-891. Thus, the trial court properly granted summary judgment on any claims based on the conditions of the roads.

3. Finally, the plaintiffs argue that summary judgment was inappropriate because they produced enough record evidence to show that they had a valid claim of continuing nuisance for the inadequate drainage and the conditions of the subdivision's roads. As set out in Section 2, supra, any claims based on a permanent nuisance are barred as untimely by OCGA § 36-11-1, and the plaintiffs did not produce sufficient evidence to support a claim of a continuing nuisance.

We greatly empathize with the plaintiffs' situation, as, from the record, it appears that there is no end in sight to their water troubles. We are nevertheless compelled to affirm the grant of summary judgment to the County because (1) the plaintiffs' negligence claims are barred by sovereign immunity; (2) any claims of a permanent nuisance or trespass are barred by the one-year presentment requirement of OCGA § 36-11-1; and (3) the plaintiffs failed to produce evidence to create a genuine issue of material fact on a claim for continuing nuisance.

*Judgment affirmed. Rickman and Reese, JJ., concur.*

19